# Booth & Flinn, Ltd., *v.* Miller, Appellant.

*Constitutional law—Title of statute—More than one subject— Appropriation—Act of May 13, 1909, P. L. 835.*

1. It is not an infringement of Article III, Section 3, of the Constitution if there are several provisions in a bill, providing they are connected with and germane to the one general object of the legislation.   It is sufficient if they relate to and are a means of carrying out the one general provision of the act.

2. The title of a bill need not embody all the distinct provisions of the bill nor serve as an index or digest of its contents, but it is

sufficient if the title fairly gives notice of the real subject of the bill, so as reasonably to lead to an inquiry into what is contained in the body of the bill.

3. The Act of May 13, 1909, P. L. 835, entitled "An act making an appropriation to the Western Pennsylvania Hospital" and providing for the appropriation of a sum of money and further that the amount so appropriated should be a non-interest bearing lien upon the premises "for the use of the Commonwealth of Pennsylvania" to be refunded if the hospital building should be converted to private use, does not offend against Section 3, of Article 3, of the Constitution. The one subject of the act is the appropriation made to the designated beneficiary; the security and lien were not separate and distinct subjects, but simply provisions to compel the hospital to apply the appropriation to charitable purposes and they are naturally and properly connected with the main subject.

*Constitutional law—Special legislation—Creation of liens— Section 7, Art. III, of the Constitution—Appropriations.*

4. The Act of May 13, 1909, P. L. 835, providing for an appropriation of money to the Western Pennsylvania Hospital, and directing that the amount so appropriated should be "a non-interest bearing lien on the said premises for the use of the Commonwealth of Pennsylvania," does not violate Section 7, of Art. III, of the Constitution of Pennsylvania, which provides that "the General Assembly shall not pass any local or special law authorizing the creation, extension or impairing of liens." This section of the Constitution does not apply to liens in favor of the State.

5. The general business of the legislative power is to establish laws for individuals, not for the sovereign; and when, the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied. This rule of construction applies not only to statutes, but also to constitutions.

6. A construction of the Act of May 13, 1909, P. L. 835, which would make it unconstitutional and void because of a lack of power in the State to reserve the lien in favor of itself, would render the whole act void and the hospital would have no right to any part of the appropriation. The appropriation and the provision for the lien are so interdependent and connected that if the provision for the lien falls, the appropriation also falls.

7. If part of a statute which is void is vital to the whole, and the other provisions are so dependent upon it and so connected with it that it may be presumed that the legislature would not have passed one without the other, the whole statute is void.

8. The courts in determining that Section 7, of Art. III, of the Constitution does not deprive the Commonwealth of its right to protect itself against the diversion of moneys appropriated to charitable purposes will give great weight and consideration · to the fact that the legislature both before and after the adoption of the present Constitution passed numerous acts creating and enforcing liens in favor of itself.

9. The lien in favor of the State created by the Act of May 13, 1909, P. L. 835, making an appropriation of money to the Western Pennsylvania Hospital, is prior to a mortgage subsequently created by the hospital to secure an issue of bonds.

Argued May 15, 1912.   Appeal, No. 102, Oct. T., 1912, by defendant, from judgment of C. P. Allegheny Co., April T., 1912, No. 593, for plaintiff on case stated in the case of Booth and Flinn, Lt'd, v. William E. Miller. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.   Reversed.

Case stated in assumpsit to determine the market ability of bonds.   Before SHAFER, J.

The opinion of the Supreme Court states the case.

*Error assigned* was in entering judgment for plaintiff.

*Richard H. Hawkins,* of *Dalzell, Fisher & Hawkins,* for appellant.—The Act of 1909 does not violate Article III, of Section 3, of the Constitution, which prohibits the passage of any special law authorizing the creation, extension or impairment of liens.

The position of the Commonwealth as debtor or creditor is distinct from that of an individual, and the State may give itself special privileges, immunities and exemptions by special laws notwithstanding the letter of the prohibition against legislation: Reed's App., 13 Pa. 476; DePutron's Est., 18 Pa. D. R. 322; Erie & Northeast Railway Co. v. Casey, 26 Pa. 287; Pittsburgh's App., 70 Pa. 142; Parker's App., 8 W. & S. 449; Clark's Est., 195 Pa. 520.

The Appropriation Act of 1909 contains but one subject, which is clearly expressed in its title: Com. v. Hospital, 198 Pa. 270; Clearfield Co. v. Poor District, 135 Pa. 86; Com. v. Jones, 4 Superior Ct. 362.

*H. K. Siebeneck,* with him *H. G. Wasson,* for appellee. —The act in question is unconstitutional because it violates Article III, Section 7, of the Constitution, since it is a local or special law authorizing the creation of a lien: Becker v. Allegheny, 85 Pa. 191; Dorsey's App., 72 Pa. 192; Dailey v. Potter County, 203 Pa. 593; Stegmaier v. Jones, 203 Pa. 47; Provident Life & Trust Company v. Hammond, 230 Pa. 407; Davis v. Clark, 106 Pa. 377; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; McKay v. Trainor, 152 Pa. 242; Van Loon v. Engle, 171 Pa. 157; Strasburger v. Guinter, 23 Pa. C. C. R. 481; Pittsburgh v. Wright, 13 Pa. D. R. 723; Tennessee Producers' Marble Co. v. Grant, 14 Pa. D. R. 453; Pittsburgh v. Hughes, 13 Pa. C. C. R. 535; Lancaster County v. Stormfeltz, 8 Lanc. Law Rev. 194; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Vulcanite Paving Co. v. Philadelphia Rapid Transit Co., 220 Pa. 603; Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486.

The title is insufficient: Becker v. Allegheny, 85 Pa. 191; Dorsey's App., 72 Pa. 192; Dailey v. Potter County, 203 Pa. 593; Stegmaier v. Jones, 203 Pa. 47; Provident Life & Trust Co. v. Hammond, 230 Pa. 407.

OPINION BY MR. JUSTICE MESTREZAT, July 2, 1912:

This was an amicable action of assumpsit to recover the price of eighty-six bonds issued by the Western Pennsylvania Hospital and secured by a mortgage on its property.

The hospital is a charitable corporation of this State created and existing under an act of the general assembly approved March 18, 1848, P. L. 218, and its supplements, and the decree of the Court of Common

Pleas No. 2 of Allegheny County entered in accordance with the provisions of the act of assembly approved May 1, 1907, P. L. 140, which decree provides, inter alia, that the corporation "may hold and enjoy real, personal, and mixed estate of any kind whatsoever, and may sell, convey, lease and encumber the same for the use, objects and benefits of the said institution." On December 1, 1910, the hospital issued and delivered to the Commonwealth Trust Company, trustees, three hundred bonds of the denomination of one thousand dollars each, payable in three years thereafter, and as security for said bonds executed and delivered to the trustee a mortgage covering its real estate in the City of Pittsburgh. By an act of the general assembly approved May 13, 1909, P. L. 835, entitled "An Act making an appropriation to the Western Pennsylvania Hospital," the State appropriated to the hospital, for the purpose of assisting in the completion of its new hospital plant upon its premises in Pittsburgh, the sum of one hundred thousand dollars, the act, in its third section, providing, inter alia, "that the amount so appropriated as aforesaid, be and the same is hereby made a non-interest bearing lien on the said premises for the use of the Commonwealth of Pennsylvania." The act further provides that no part of the appropriation shall be available until the board of managers shall certify to the Auditor General that exclusive of State aid, the sum of $325,000 has been expended on the building, nor until they shall file with the Auditor General a written obligation agreeing that the sum appropriated shall be refunded to the State whenever the building shall be converted to private use, conducted for private gain, or be abandoned or sold or transferred to any person for any use other than that authorized by the certificate of incorporation. The certificate and obligation were filed in April, 1910. Prior to December 1, 1910, the hospital received from the State a portion of the appropriation, and prior to July 29, 1911, received

the balance thereof, and expended the moneys so received for the purposes for which it was appropriated.

The plaintiff being the owner of eighty-six of the said mortgage bonds of the hospital agreed to sell them to the defendant at par and accrued interest, if the bonds were a first lien on the mortgage premises. The defendant refused to accept and pay for the bonds, and this action was brought to enforce payment.

The defendant denies that the bonds are a first lien on the property of the hospital because of the alleged prior lien created in favor of the Commonwealth by reason of the provisions of the Act of 1909, making the appropriation. The learned judge of the court below held that the part of the appropriation act creating the lien was unconstitutional, because (a) it offends against Section 3, Article III, of the Constitution, which provides that "no bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in its title," and (b) that it offends against Section 7, Article III, of the Constitution, which provides that "the general assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens." The court thereupon entered judgment for the plaintiff from which the defendant has taken this appeal.

We do not agree with the learned court below that the Act of May 13, 1909, P. L. 835, offends Article III, Section 3 or Section 7, of the Constitution. The act cannot be successfully attacked because it contains more than one subject, or that the subject is not clearly expressed in the title. The subject of the act is the appropriation of a certain sum to a charitable institution. The act had in view a single purpose and that was the appropriation of the money for the charity administered by the hospital. It is claimed, however, that the provisions for the security and the lien constitute additional subjects which invalidate the act, but we are not favorably impressed with this position. The

only subject of the act is the appropriation made to the designated beneficiary; the security and lien were not separate and distinct subjects but simply provisions to compel the hospital to apply the appropriation to the charitable purpose, and they are naturally and properly connected with the main subject. These provisions were not subjects upon which the assembly was legislating, but were intended to and are related to and a part of the one general subject, the appropriation, with which the legislature was dealing in the act. If this be not true, it follows that the legislature must pass three acts instead of one act in making the appropriation and in preventing it from being diverted to a different use. It would be required to pass an act donating the money, another act providing for the statement and the obligation, and another act providing for the lien. The purpose of the section in question was, as we have frequently said, to strike down omnibus bills which unite in the same law subjects entirely foreign to and not connected with each other, thereby giving no notice of the greater part of the contents of the bill and affording opportunity for fraud and deception. It is, however, no infringement of the section if there are several provisions in the bill, provided they are connected with and germane to the one general subject of the legislation. It is sufficient if they relate to and are a means of carrying out the one general purpose of the act. As said by STERRETT, C. J., in Kelley v. Mayberry Township, 154 Pa. 440, 449, instead of containing more than one subject, the provisions are cognate, each, respectively, relating not to a separate and independent subject of legislation, but to branches of the same general subject.

The title, like the act itself, we think is sufficient. It is not misleading, and gives notice of everything contained in the act. In making the appropriation there is no presumption that the State will not designate the purpose for which it is to be used and protect itself

against the fund being diverted to other purposes. The right to do so is unquestioned, and the title disclosing the appropriation is sufficient notice to interested parties to put them upon inquiry which will result in a disclosure of the terms and conditions on which the appropriation was made. If, therefore, any person was interested in the bill, he was bound to know that germane to the subject expressed in the title was the purpose for which the appropriation was to be used as well as the protection against its misuse. We have repeatedly said that the title need not embody all the distinct provisions of the bill, nor serve as an index or digest of its contents, but that it is sufficient if the title fairly gives notice of the real subject of the bill, so as reasonably to lead to an inquiry into what is contained in the body of the bill. The title to the Act of 1909 was, therefore, not required to embrace, in addition to the one general subject, an index to the several provisions for carrying out the purpose of the appropriation. It was sufficient to put legislators and other interested parties on notice which would have led to an inquiry into the contents of the bill. Nothing more is required.

We are of the opinion that Section 7, of Article III, of the Constitution, prohibiting the enactment of any local or special law authorizing the creation, extension or impairing of liens did not prevent the passage of the Act of 1909, nor invalidate any of its provisions. Mr. Buckalew, an eminent lawyer and a leading member of the constitutional convention says in his work on the Constitution that "this clause can hardly apply to liens of the State." It is a maxim of the common law that the King is not bound by any statute, if he be not expressly named to be so bound. It is inferred, prima facie, that the law made by the Crown, with the assent of the Lords and Commons, is made for subjects and not for the Crown: per Alderson, B. in Attorney General v. Donaldson, 10 M. & W. 117, 122. The same doc-

trine applies to the American States. In Commonwealth v. Baldwin, 1 Watts 54, Chief Justice GIBSON delivering the opinion said, inter alia: "In a monarchy the exception of the sovereign from the operation of statutes in which he is not named, is founded in prerogative; and hence it is supposed that no such exemption can be claimed for a sovereign constituted of the people in their collective capacity. It is certain that so much of the prerogative as appertained to the king by virtue of his dignity is excluded by the nature of our government, which possesses none of the attributes of royalty; but so much of it as belonged to him in the capacity of parens patriæ, or universal trustee, enters as much into our political compact, as it does into the principles of the British constitution. ...... Without pretending to fix its limits in all cases, it may be safely asserted that this prerogative is a principle of our government and a part of the law of the land." Mr. Justice LEWIS speaking for the court in Jones v. Tatham, 20 Pa. 398, said (p. 411) : "Words of a statute applying to private rights do not affect those of the state. ...... The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied." Mr. Justice STRONG delivering the opinion in Dollar Savings Bank v. United States, 86 U. S. (19 Wallace) 227, after saying that the king was not bound by any act of Parliament unless he be named therein by special and particular words, continued: "The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different states and practically in the federal courts. ...... The reason of the rule which denies to others the use of any other than the statutory remedy is wanting, therefore, in applicability to the government, and the rule itself must not be extended beyond its reason."

The established rules of construction applicable to statutes apply also in the construction of a constitution: Nicholson v. Thompson, 5 Rob. (La.) 367; People v. May, 3 Mich. 598; People v. Potter, 47 N. Y. 375. There is nothing in Section 7, of Article III, that shows that the framers of the Constitution intended that this section should apply to legislation making appropriations by the State in separate acts for charitable or educational purposes, as required by Section 15 of the same article, and, therefore, it falls within the general rule announced in the above cases that such legislation is exempt from the constitutional prohibition against local or special legislation. It has been the uniform practice of the general assembly to enact legislation authorizing the Commonwealth by such methods to enforce its claims, to collect its debts, and create and enforce liens. It is true that most of these acts are general, but nevertheless they show that in such legislation the Commonwealth does not stand on the same footing as a private suitor, but may protect itself as it deems best when dealing with its debtor, or may impose terms when it devotes its funds to charitable or educational purposes. In the light of such legislation and the uniform practice of enacting similar legislation on such subjects before and since the adoption of the present Constitution we cannot conclude that the constitutional provision was intended to apply to the State in making appropriations of this character. During the very session at which the act under consideration was passed the legislature in several acts making appropriations to charitable and educational institutions adhered to the same practice, and inserted provisions stipulating the use to which the money was to be applied and reserving a non-interest bearing lien on the property of the institution. Mr. Justice AGNEW in Cronise v. Cronise, 54 Pa. 255, speaking of the mooted power of the legislature to grant divorces under the Constitution of 1790 said (p. 261): "The Constitution of

1790 was framed in view of this practice.   The contin-
ued exercise of the power after the adoption of the Con-
stitution of 1790 cannot be accounted for, except on the
ground that all men, learned and unlearned, believed it
to be a legitimate exercise of the legislative power.  This
belief is further strengthened by the fact that no judi-
cial decision has been made against it.   Communis error
facit jus would be sufficient to support it but it stands
upon the higher ground of contemporaneous and con-
tinued construction by the people of their own instru-
ment."   While we are not bound by the legislative in-
terpretation of the Constitution, yet it is entitled to
weight, and strengthens our conviction that the framers
of the Constitution did not intend by Section 7, of Ar-
ticle III, to deprive the Commonwealth of its right to
protect itself against the diversion of moneys appropri-
ated to charitable purposes.

The State when acting in its sovereign capacity oc-
cupies a position entirely different and superior to that
of the citizen.   It cannot be sued without its consent.
The statute of limitations, without it is expressly so
declared, cannot be invoked to defeat its claim as a
creditor.   It takes precedence over other creditors.   It
may forego its rights as a sovereign power and place
itself on the same footing as one of its citizens, but un-
less the statutory language affecting the subject so de-
clares it will not be presumed.   The State cannot be de-
prived of its rights as a sovereign by inference, it must
be done by appropriate constitutional or legislative
action.

McLeod v. Central Normal School Association, 152
Pa. 575, decided since the adoption of the present Con-
stitution, recognizes the validity of such legislation.
There the general assembly appropriated money and
specified the particular educational purpose to which
it was to be applied with a proviso for a lien similar
to that in the act under consideration.  · While the con-
stitutionality of the act in that case was not attacked,·

the court approved the provision imposing the lien and recognized its validity.   Mr. Justice CLARK, delivering the opinion, after saying that the act established the relation of debtor and creditor, proceeds (p. 583) : "The object and aim of all the legislation since 1857 has been to give the State standing as a creditor against them (Normal Schools) in order that, in the event of any such attempted diversion, the State might lay its hand upon the property for its own indemnification."   The same purpose is manifest in the act under consideration. It appropriates the money for the specific charitable use and establishes the relation of debtor and creditor between the hospital and the State so that the purpose of the appropriation may be made effective and the fund cannot be diverted to any other purpose.   It was not an absolute and unconditional gift, but one conditioned that the hospital should continue to use the money for the designated purpose or it should be repaid to the State.   The hospital takes the appropriation cum onere, and when it fails to use the fund for the purpose, it, as a debtor, must repay the money to the creditor.

If, however, the contention of the appellee be correct, that the provision for a lien on the premises of the hospital is unconstitutional and void, we see no escape from the conclusion that the whole act must fall and that the hospital has no right to any part of the appropriation.   The first section of the act makes the appropriation, the second section prevents the payment of any part of the fund until the managers of the hospital have certified that exclusive of State aid three hundred and twenty-five thousand dollars have been expended on the building, and Section 3 provides that no part of the appropriation shall be available until the managers give an obligation to the State that the building shall not be abandoned or converted to a private use, and providing that the appropriation shall be a non-interest bearing lien on the premises.   These are dependent provisions, and are in no sense separate and

independent of each other. It cannot be doubted that the legislature would not have made the appropriation had it not been for the protection against the diversion of the fund to other than charitable purposes. The object of the legislation as disclosed by its terms was to appropriate the fund, not to private uses or purposes but to the charity represented by the hospital. This manifestly appears from the condition that the appropriation shall not be available until the sum of three hundred and twenty-five thousand dollars had been expended on the building, and the provision in the act against the diversion of the fund to any other purpose than that authorized by the hospital's charter. The "compensation for or the inducement to" make the appropriation was the provision that it should be applied to no other purpose than the charity represented by the hospital which was secured by the obligation and the lien. The several provisions including the one creating the lien are, therefore, dependent and connected, and show that the legislature intended them to be read together as a whole, and that if the provisions protecting the fund against diversion could not be carried into effect, the hospital should not have the appropriation. If, therefore, the provision for the lien falls, the appropriation falls. This is the settled rule of statutory interpretation applicable in such cases: 1 Lewis' Sutherland on Stat. Const. Sec. 296. In Rothermel v. Meyerle, 136 Pa. 250, Mr. Justice CLARK speaking for the court says (p. 265) : "If the part (of the statute) which is unconstitutional in its operation, is independent of, and readily separable from that which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such; but, if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void." Chief Justice

SHAW, delivering the opinion in Warren v. Mayor of Charlestown, 68 Mass. (2 Gray 84) 99, says: "If they (the parts of the act) are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are constitutional, all the provisions which are thus dependent conditional or connected must fall with them." This is quoted and approved by Chief Justice FULLER delivering the opinion of the Supreme Court of the United States in Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 635. MARSHALL, J., delivering the opinion in Gilbert Arnold Land Company v. Superior, 91 Wis. 353, 357, says: "If the void part of the act is the compensation for or the inducement to the valid portion, so that, looking at the whole act, it is reasonably clear that the legislative body would not have enacted the valid portion alone, then the whole act will be held inoperative and void."

It follows that Article III, Section 7, has no application to the Act of 1909, and that therefore the provision in the act creating a lien for the money appropriated is a valid exercise of the legislative power and the lien thus created is effective. This lien is prior to the mortgage given to secure the bonds which are the subject of this litigation, and, therefore, in accordance with the stipulation of the parties, the court below should have entered judgment for the defendant.

The judgment of the court below is reversed and judgment is now entered for the defendant.