## Commonwealth v. Roberts

*Warren S. Burchinal,* district attorney, for Commonwealth.

*J. Albert Reed* and *Thomas L. Anderson,* for defendant.

BROWNSON, P. J., April 13, 1935.—The Constitution in section 3 of article III provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

Our appellate courts have laid down and firmly established the following rules, settling the effect of this constitutional provision:

1. The inclusion in a statute of an enactment dealing with a subject not covered by the title of the act renders the statute pro tanto unconstitutional: Commonwealth v. Frantz, 135 Pa. 389, 392.

2. Even if the title should contain a general statement of a subject matter, comprehensive enough to include some particular matter connected therewith, yet if such general statement be followed by qualifying language, clearly indicating that such generality of statement is to be restrained and limited to some only of the particular objects which such general statement would otherwise be comprehensive enough to embrace, so that the title becomes a misleading one, any provisions in the body of the statute which the title so indicates to be not intended to be embraced, are invalid: Sugar Notch Borough, 192 Pa. 349, 353; Commonwealth v. Arguello, 7 Wash. Co. 17, and cases cited.

3. All that the Constitution requires is that the "subject" of the legislation shall be expressed in the title; it does not require that the title shall be an index or table of contents, and any provisions which are germane to the specified subject, and promotive of the general purpose disclosed by the title, may constitutionally be embraced in the act, although not specifically mentioned in the express words of the title; it is enough if the subject and purpose of the bill be so stated as reasonably to lead to an inquiry into the body of the bill in order to ascertain how that subject is dealt with therein, and what regulations, germane thereto, may or may not be embraced in the proposed enactment: Mallinger v. Pittsburgh, 316 Pa. 257, 261, 262, and cases cited; Booth & Flinn v. Miller, 237 Pa. 297, 302-304; Page v. Carr, 232 Pa. 371, 375.

The indictment in the case at bar is intended to charge a violation of section 602(b) of the Act of November 29, 1933, P. L. 15, which reads as follows:

"It shall be unlawful for any person, except a manufacturer, or the board, or the holder of a sacramental wine permit or of an importer's license, to keep any liquor within this Commonwealth which was not lawfully acquired prior to January first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store." Section 610 (b) makes a violation of this provision a misdemeanor.

The title of the act sets forth that it is an act "to regulate and restrain the sale, importation, and use of certain alcoholic beverages", and exhibits the purpose (to this end) of providing for the exercise of powers and duties by the Pennsylvania Liquor Control Board, for the establishment and operation of State stores for the sale of such beverages which are not to be consumed on the premises where sold, the licensing of vendors of beverages sold for consumption on the premises, and of "prohibiting certain sales or practices in, connections with, and transactions in such beverages by licensees and others; . . . and imposing penalties." The subject matter is the regulation and restraint of the sale, importation and use of alcoholic beverages; and the indicated purpose is to effect such regulation and restraint by establishing a system, to be administered by a Liquor Control Board, which shall govern the importation and sale of such beverages, included in which system shall be the sale by State stores of liquors not for consumption on the premises, and the sale by licensees of liquors which are to be consumed upon the premises. Any provisions of the statute which are germane to and promotive of this purpose are, under the authorities above cited, sufficiently covered by this title.

One of the reasons assigned as grounds of this motion to quash the indictment is that section 602 (b) is unconstitutional.

The argument made in support of this reason consisted in citing an opinion of the Court of Quarter Sessions of Greene County, in the case of Commonwealth v. Stofcheck, decided on February 4, 1935. The court in that

case concluded that as, "nowhere in the act is the word 'possession' used," and this word "is conspicuous by its absence from the title," and as the absence of both "keeping" and "possession" from the title justifies the inference that the act did not intend to deal in any manner with the unlawful keeping or possession of liquor, it must be held that this statute "does not give notice by its title that the possession or keeping of such beverages, under certain circumstances, was to be embraced and to be considered in the act;" and accordingly subparagraph (*b*) of section 602 was pronounced unconstitutional.

With this conclusion we are unable to agree.

If the title of this act had stopped with declaring it to be "An act to regulate and restrain the sale, importation, and use of certain alcoholic beverages", there could then be no room for question as to the constitutionality of section 602 (*b*), because a prohibition of the keeping (whether for resale or for consumption) of illicitly acquired liquors would unquestionably be germane to the purpose so stated. But the draftsman of this act has followed the practice that has been prevalent for some years, of adding to the statement of the general subject a statement, in the nature of a table of contents, of particular provisions intended to be embraced in the statute—a practice that has often had the effect of making trouble by giving rise to questions of constitutionality, and that was strongly condemned by Mitchell, C. J., in Commonwealth v. Broad Street Rapid Transit Street Ry. Co., 219 Pa. 11, at pages 16, 17. However, in the present instance, the table of contents by which the above quoted words are followed contains certain statements which are broad enough to include the provisions of section 602 (*b*) : it gives notice that the act is to contain prohibitions of "certain . . .practices in, connections [connection] with, and transactions in such beverages". We agree that this language cannot be held to embrace practices or transactions that are not germane to the general purpose of the act as stated, because to extend it thereto would be to cause the act to embrace more than one

subject. But it is sufficient to put a reader of the title upon inquiry as to what prohibitions, germane to that purpose, may be contained in the body of the act; and it is clear to us that the prohibition contained in section 602 (b) is germane to the purpose, exhibited by the title, of placing the sale of alcoholic beverages under the control of the Liquor Control Board, and of having sales thereof not for consumption on the premises made by the State stores. If persons who obtain, otherwise than by purchasing from the authorized vendors, the State stores, stocks of liquor that are kept for sale or consumption, are to be free from any interference by the law, then the success of the experiment which the legislature is trying, of attempting to control the traffic in such liquors by the establishment and operation of State stores, will be interfered with and imperiled by the "practice" or "transaction" of keeping the liquors so otherwise acquired. If a prohibition against the "keeping" of liquors not purchased from a State store will tend to make the State-store system more effective as a regulatory control of the liquor traffic, (and that it will appears to us to be obvious), then there can be no question that such a prohibition is germane to the purpose manifested in the title.

The cases of Commonwealth v. Barbono, 56 Pa. Superior Ct. 637, and Commonwealth v. Uram, 7 Wash. Co. 23, cited in the opinion above mentioned, are distinguishable, because the title of the Act of June 15, 1911, P. L. 975, under which those cases were decided, differed essentially in its form from that of the Act of November 29, 1933; and the decisions rendered were not based upon the mere absence from the title of the word "possession", but upon the fact that affirmative language of the title expressly and explicitly limited the prohibitions of the act to certain things other than the having in possession; while here, on the other hand, the title clearly gives notice that prohibitions of certain things having relation to the general subject matter, which are not specifically described in the title, will be found in the body of the act.

Our conclusion is that section 602(*b*) is constitutional.

The motion to quash is grounded also upon the claim that "the possession of liquor, as charged in said indictment, is not an indictable offense" under the Act of November 29, 1933, or any other act now in force.

Attention has been called to the Act of December 5, 1933, P. L. 38, section 13 of which provides for the imposition of a fine of $25, in a summary conviction, upon any person, other than an importer, who shall "accept delivery of distilled spirits, rectified spirits, or wines in containers upon which . . . labels . . . or . . . stamps [showing the payment of taxes on the liquors] . . . do not appear". A similar provision, as to the liquors rendered subject to the floor tax imposed by the Act of November 22, 1933, P. L. 5, appears in that act. It is argued that to interpret section 602(b) of the Act of November 29, 1933, as applying, or intended to apply, to liquors not purchased from a State store, would render it inconsistent with those other statutes. We do not see the inconsistency. Those provisions for fining in a summary proceeding are parts of tax statutes, and the act which they render finable is one that would assist a taxable vendor to avoid payment of tax upon the liquor, viz., the acceptance of delivery when acquiring it, if the container does not have on it the required evidence of the payment of tax. They have no relation to the objects of the Liquor Control Act, and what section 602(*b*) of the latter prohibits is an entirely different criminal act, viz., the keeping of liquor, i. e., keeping it on hand for either sale or consumption, after its acquisition.

But the motion also raises a question of the formal sufficiency of the indictment: that is to say, it sets forth the objection that, "as alleged in the indictment," the act charged against the defendant does not amount to an indictable offense. The statutory description of the offense intended to be charged is that it consists in the keeping of liquor by "any person, except a manufacturer, or the board, or the holder of a sacramental wine permit

or of an importer's license". When exceptions of this character are thus incorporated in the enacting clause, so as to make them "a material part of the definition of the offense," the indictment should negative them, and in the event of failure to do so will be quashable: Commonwealth v. Shelly, 2 Luz. L. R. Rep. 300, Rice, P. J. Section 13 of the Liquor Act of March 27, 1923, P. L. 34, now repealed, altered this rule as to indictments brought under that act; and the Act of February 19, 1926, P. L. 16, in section 22 thereof, made a similar provision as to exceptions contained in that act. The Act of 1926 was amended extensively by the Act of December 8, 1933, P. L. 57, but the amending act left section 22 unchanged. Section 22 is, however, not a general enactment, but one specially limited in its application to "any provision or exception contained in this act." Nowhere in the Act of 1926, as amended in 1933, do we find any exception in connection with liquors not purchased from State stores; in fact the amended Act of 1926 does not deal with State liquor stores at all. Section 22 can, therefore, have no application to indictments based on the Act of November 29, 1933; and we have found no other statute taking prosecutions under the latter act out of the general rule requiring exceptions to be negatived.

In this case, the indictment does negative some of the applicable exceptions, but not all of them, and in this respect it fails, in part, to follow the information. The latter describes the defendant as "not being a manufacturer, or an officer, agent, or an employee of the Pennsylvania Liquor Control Board, or a holder of a sacramental wine permit or of any importer's license," but the indictment says, merely, not being "a licensed manufacturer, a holder of a sacramental wine permit, or a holder of an importer's license," and makes no reference whatever to the Liquor Control Board. The exception of "the board" was manifestly intended to mean, and must be interpreted as meaning, not merely the members of the board, but its entire organization, including its agents

454

and employes, since liquors that are in the keeping of the latter are, in law, in the keeping of the board. For all that the averments of this indictment show, the defendant may have been an agent or employe of the board, and may have had the liquors which the indictment refers to in his custody and keeping as such. For this reason we believe the indictment to be formally defective.

And now, April 13, 1935, the indictment is quashed as being formally defective; but leave is granted to the district attorney to lay a new bill of indictment before the next grand jury upon the same information.

[NOTE.—The Superior Court, in the case of Commonwealth v. Stofchek (opinion filed July 18, 1935), reached the same conclusion regarding the sufficiency of the title of the Liquor Control Act as did the court in this case.]