**H. William DeWEESE, House Minority Leader and Member of the House Rules Committee, and Mike Veon, Democratic Whip of the House of Representatives, Petitioners**

v.

**Honorable C. Michael WEAVER Secretary of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2005.

Decided July 26, 2005.

See also 824 A.2d 364.

John W. Morris, Philadelphia and Lee Swartz, Harrisburg, for petitioners.

Howard G. Hopkirk, Harrisburg, for respondent.

Linda J. Shorey and John P. Krill, Jr., Harrisburg, for intervenor, John M. Perzel.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The instant case concerns the validity of the enactment of the Act of June 19, 2002, P.L. 394 (Act 57), which amended the provisions of the Judicial Code.[1] Presently before the Court are the cross-motions for summary judgment filed by H. William DeWeese, House Minority Leader and Member of the House Rules Committee, and Mike Veon, Democratic Whip of the House of Representatives (collectively, Petitioners), C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania (Respondent)[2], and John M. Perzel, Speaker of the House of Representatives, and Robert C. Jubelirer, President *Pro Tempore* of the Senate (Intervenors)[3], to the petition for review in the nature of a complaint seeking declaratory and injunctive relief that was filed by Petitioners in our original jurisdiction.

Act 57 began as Senate Bill 1089, Printer's Number 1370, and was introduced in the Pennsylvania Senate on October 9, 2001 as an act amending the DNA Detection of Sexual and Violent Offenders Act (DNA Act), Act of May 28, 1995, Sp. Sess.,

1. 42 Pa.C.S. §§ 101—9812.

2. Pedro A. Cortés is presently the Secretary of the Commonwealth.

3. On June 11, 2003, this Court granted the petition for leave to intervene in this case that was filed by Speaker Perzel and Senator Jubelirer.

P.L. 1009, *as amended*, 35 P.S. §§ 7651—7651.1102. S.B. 1089 consisted of three pages and was entitled:

> AN ACT Amending the Act of May 28, 1995 (1st Sp.Sess., P.L.1009, No.14), entitled "An act providing for DNA testing of certain offenders; establishing the State DNA Data Base and the State DNA Data Bank; further providing for duties of the Pennsylvania State Police; imposing costs on certain offenders; and establishing the DNA Detection Fund", further providing for DNA sample required upon conviction and for expungement.[4]

That same day, S.B. 1089 was referred to the Senate Judiciary Committee and reported out of committee.

On October 15, 2001, S.B. 1089 was reported as committed and had its first consideration by the Senate. On October 16, 2001, S.B. 1089 was re-referred to the Senate Appropriations Committee, and was re-reported as committed on October 22, 2001. On November 13, 2001, S.B. 1089 had its second consideration by the Senate. On November 14, 2001, following the third consideration, the Senate passed S.B. 1089.

On November 15, 2001, the House received S.B. 1089 and it was referred to the House Judiciary Committee. On December 10, 2001, S.B. 1089 was: (1) reported as committed; (2) received its first consideration by the House; (3) was laid on the table; (4) was removed from the table; (5) was re-referred to the Appropriations Committee; and (6) was re-reported as committed. On December 11, 2001, S.B. 1089 had its second consideration by the House. On December 12, 2001, S.B. 1089 was amended and, now bearing Printer's

Number 1625, consisted of four and one-half pages and was entitled:

> AN ACT Amending the Act of May 28, 1995 (1st Sp.Sess., P.L.1009, No.14), entitled "An act providing for DNA testing of certain offenders; establishing the State DNA Data Base and the State DNA Data Bank; further providing for duties of the Pennsylvania State Police; imposing costs on certain offenders; and establishing the DNA Detection Fund", FURTHER DEFINING "FELONY SEX OFFENSE" AND "OTHER SPECIFIED OFFENSE"; AND further providing for DNA sample required upon conviction and for expungment.

That same day, the amended S.B. 1089 received its third consideration by the House and was passed by the House.

That same day, following its passage by the House, S.B. 1089 was returned to the Senate for concurrence in the amendments made by the House, and it was referred to the Rules and Executive Nominations Committee. On March 18, 2002, S.B. 1089 was re-reported on concurrence, as amended by the Senate. On March 19, 2002, the Senate concurred in the House amendments, as amended, and S.B. 1089, now with Printer's Number 1799, returned to the House.

On March 25, 2002, S.B. 1089 was referred to the House Rules Committee. On June 4, 2002, S.B. 1089 was re-reported on concurrence as further amended by the House. Now bearing Printer's Number 2041, S.B. 1089 consisted of 23 pages and was entitled:

> AN ACT AMENDING TITLE 42 (JUDICIARY AND JUDICIAL PROCEDURE) OF THE PENNSYLVANIA CONSOLIDATED STATUTES, PROVIDING FOR DNA TESTING OF

---

4. The original version of S.B. 1089 proposed to amend the DNA Act by requiring that a genetic sample be obtained from every felony sex offender during his or her incarceration, and to eliminate the expunction of DNA records from the State DNA Data Bank.

CERTAIN OFFENDERS; REESTAB-LISHING THE STATE DNA DATA BASE AND THE STATE DNA DATA BANK; FURTHER PROVIDING FOR DUTIES OF THE PENNSYLVANIA STATE POLICE; IMPOSING COSTS ON CERTAIN OFFENDERS; REES-TABLISHING THE DNA DETEC-TION FUND; FURTHER PROVID-ING FOR THE APPORTIONMENT OF LIABILITY AND DAMAGES; IM-POSING PENALTIES; AND MAK-ING A REPEAL.[5]

That same day, the House concurred in the Senate amendments to the House amendments, as further amended by the House.

Upon its return to the Senate, S.B. 1089 was placed on the calendar. On June 12, 2002, S.B. 1089 was passed by the Senate with technical amendments. S.B. 1089, now bearing Printer's Number 2082, was sent back to the House for concurrence in the amendments.

On June 17, 2002, the House referred S.B. 1089 to the Rules Committee, which re-reported the bill on concurrence, as committed. Later in the day, the House concurred in the Senate amendments to the House amendments. On June 18, 2002, S.B. 1089, Printer's Number 2082 was signed in the Senate. On June 19, 2002, S.B. 1089, Printer's Number 2082 was signed in the House; later that day, it was signed into law by the Governor.

On August 14, 2002, Petitioners filed the instant petition for review, seeking declaratory and injunctive relief, in which they alleged that the enactment of Act 57 violated Article 3, Sections 1[6], 2[7], 3[8] and 4[9] of

---

**5.** As this Court has previously noted:

> Section 1 of SB 1089, PN 2041 codified the DNA Act, which had previously been a stand alone, uncodified enactment; the DNA Act became new Chapter 47 of the Judicial Code. 42 Pa.C.S. §§ 4701–4741. Section 2 of SB 1089, PN 2041, amended Chapter 71 of the Judicial Code, which relates to comparative negligence. Specifically, SB 1089, PN 2041 provided that in civil cases where liability for negligence is "attributed to more than one defendant", each defendant can only be held liable for proportional damages equal to his proportion of the total liability.

*DeWeese v. Weaver*, 824 A.2d 364, 367–368 (Pa.Cmwlth.2003) (footnotes omitted). It should be noted that the Act of November 30, 2004, P.L. 1428, repealed the provisions of Sections 4701 through 4741 of the Judicial Code, and moved them to Chapter 23 of Title 44 of the Pennsylvania Consolidated Statutes, 44 Pa.C.S. §§ 2301–2336.

**6.** Article 3, Section 1 of the Pennsylvania Constitution provides:

> No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

PA. CONST. art. III, § 1.

**7.** Article 3, Section 2 of the Pennsylvania Constitution provides:

> No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.

PA. CONST. art. III, § 2.

**8.** Article 3, Section 3 of the Pennsylvania Constitution provides:

> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

PA. CONST. art. III, § 3.

**9.** Article 3, Section 4 of the Pennsylvania Constitution provides:

> Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the

the Pennsylvania Constitution. On September 6, 2002, Respondent filed preliminary objections in the nature of a demurrer in which he alleged that Petitioners failed to state a cause of action upon which relief can be granted. As a result, Respondent requested that Petitioners' action be dismissed.

On May 13, 2003, this Court issued an opinion and order disposing of Respondent's preliminary objections. *See DeWeese.* With respect to the purported violation of the single subject requirement of Article 3, Section 3, this Court noted that, in order to pass muster, each subject in an act must be "germane", or bear a "proper legislative relation", to the other subjects in the act. *DeWeese*, 824 A.2d at 370. Regarding the enactment of Act 57, this Court noted:

> We cannot say that requiring DNA samples from incarcerated felony sex offenders bears a "proper relation" to joint and several liability for acts of negligence. While the expungement of a DNA record may arguably relate to the "business of the courts", Chapter 47's main purpose is to assist in the investigation and apprehension of criminals. The germane standard is not a high one, but Act 57 does not satisfy it.

*Id.*

With respect to the codification exception of Article 3, Section 3, this Court noted that this exception was limited to [l]aws that have previously been enacted [and] are simply being readopted in a codified form, with revisions to the language of the prior enactments made

vote is taken by the yeas and neas, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

PA. CONST. art. III, § 4.

**10.** We qualified this determination by noting:

only as needed to create a unified body of law by harmonizing conflicts, filling omissions and otherwise clarifying the existing law that goes into the code. *Id.* at 370 n. 14. In rejecting the assertion that the enactment of Act 57 fell within this exception we noted that "[h]ere, we deal with the first time placement of a previously stand alone statute, the DNA Act, into the Judicial Code in addition to amendments to Chapter 71 of the Judicial Code." *Id.* at 370.[10]

With respect to the purported violation of Article 3, Section 1, this Court noted that this provision only requires that the title of the final form of a bill not be "actually deceptive", or fail to put a reasonable person on notice of the bill's contents. *Id.* at 371. Regarding the enactment of Act 57, this Court noted:

> Here, Petitioners allege that the title of SB 1089, PN 2082 was not clear, but they do not allege that the title was so unclear as to be fraudulent or deceptive. Further, the final form of the bill, SB 1089, PN 2082, expressly stated in the title that the bill contained amendments to the Judicial Code, a statute broad in scope, and it specified those amendments as codifying the DNA Act and providing for "the apportionment of liability". The petition for review does not aver that the title failed to provide notice of the bill's contents to a single "reasonable person".... The title serves as a signal not a précis of the bill's contents. Thus, we hold that the petition for review fails to state a cause of

[W]e decide only that amendments to a previously codified law do not escape the mandate of Article III, Section 3 merely because the amendments are made to a single codified law. This is particularly true where, as here, one of the amendments is a first time codification of a prior statute.

*Id.* at 370 n. 13.

action under Article III, Section 1 of the Pennsylvania Constitution.

*Id.* at 372 (citation and footnote omitted). Based on the foregoing, this Court overruled the preliminary objections as to the Article 3, Section 3 claim, but sustained the preliminary objections to the Article 3, Section 1 claim. *Id.*

On June 11, 2003, Intervenors filed an answer and new matter to the petition for review. On June 12, Respondent filed an answer to the petition for review. On June 30, 2003, Intervenors filed an application for extraordinary relief in the Pennsylvania Supreme Court, asking that court to assume jurisdiction in this matter. On December 30, 2003, the Supreme Court issued an order denying Intervenors' application for extraordinary relief, citing *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566 (2003).

On January 14, 2005, Petitioners filed the instant motion for summary judgment, seeking a final judgment declaring that Act 57 was enacted in violation of Article 3, Sections 2, 3 and 4 of the Pennsylvania Constitution. On January 27, 2005, Intervenors filed an answer to the motion for summary judgment, and a cross-motion for summary judgment. On January 28, 2005, Respondent filed answer to Petitioners' motion for summary judgment, and a cross-motion for summary judgment.

All of the parties have filed briefs in support of their respective motions, and the cross-motions for summary judgment are now before this Court for disposition. As the parties agree that there are no material facts in dispute, the sole legal issue to be determined in disposing of the cross-motions for summary judgment is whether the enactment of Act 57 violated the provisions of Article 3, Sections 2, 3 or 4 of the Pennsylvania Constitution.

We initially note that a motion for summary judgment may be properly granted only in those cases where the record clearly shows that there exists no outstanding issues of material fact and the moving party is entitled to judgment as a matter of law. *L.J.S. v. State Ethics Commission,* 744 A.2d 798 (Pa.Cmwlth.2000). In disposing of a motion for summary judgment, the record must be viewed in a light most favorable to the opposing party, and all doubts as to the existence of a material fact must be resolved in favor of the non-moving party. *Id.* Thus, a motion for summary judgment requires a determination whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*

With respect to Article 3, Section 3 of the Pennsylvania Constitution, Petitioners claim that in disposing of Respondent's preliminary objections in *DeWeese,* this Court clearly and decisively held that the enactment of Act 57 violated the provisions of Article 3, Section 3 of the Pennsylvania Constitution. Petitioners assert that, in *City of Philadelphia,* the Pennsylvania Supreme Court affirmed the rationale of this Court's opinion in *DeWeese,* and cites the opinion with approval. As a result, Petitioners contend that they are entitled to summary judgment based on our earlier opinion in this matter.

In contrast, Respondent and Intervenors claim that this Court's opinion in *DeWeese* is incorrect. Specifically, they assert that both parts of S.B. 1089, regarding the codification and repeal of the DNA Act and joint and several tort liability, need not relate to one another but, rather, relate to the general overarching subject of either the "business of the courts" or "judicial procedure". In addition, they claim that the enactment of Act 57 falls within the codification exception in Article 3, Section 3 which excepts from the single subject requirement "a bill codifying or

compiling the law or a part thereof." PA. CONST. art. III, § 3.

Contrary to Respondent's and Intervenors' assertion, this Court quite properly required that both parts of S.B. 1089, regarding the codification and repeal of the DNA Act and joint and several tort liability, need to relate to one single overarching subject in order to comply with the provisions of Article 3, Section 3 of the Pennsylvania. Indeed, as the Pennsylvania Supreme Court has recently noted:

> While recognizing the importance of Section 3, we acknowledged that bills are frequently subject to amendments as they proceed through the legislative process and not every supplementation of new material is violative of the Constitution. Thus, "where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title", the requirements of Article III, Section are met. [*City of Philadelphia*, 575 Pa. at 575, 838 A.2d at 587]. Article III, Section 3 must have, however, some limits on germaneness, for otherwise virtually all legislation—no matter how diverse in substance—would meet the single—subject requirement, rendering the strictures of Section 3 nugatory. As stated by our Court in *Payne v. School Dist. Of Coudersport Borough*, [168 Pa. 386, 389,] 31 A. 1072, 1074 (1895), "no two subjects are so wide apart that they may not be brought into a common focus, if the point of view can be carried back far enough." Thus, defining the constitutionally-valid topic too broadly would

render the safeguards of Section 3 inert. Conversely, the requirements of Section 3 must not become a license for the judiciary to "exercise a pedantic tyranny" over the efforts of the Legislature. *City of Philadelphia*, [575 Pa. at 578,] 838 A.2d at 588 (citing *Estate of Rochez*, [511 Pa. 620, 626,] 515 A.2d 899, 902 [ (1986) ] ). Indeed, "[f]ew bills are so elementary in character that they may not be subdivided under several heads...." *Payne*, [168 Pa. at 389,] 31 A. at 1074.

*Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* — Pa. ——, 877 A.2d 383, 395 (2005).

■ As noted above, with respect to the single subject requirement of Article 3, Section 3, in *DeWeese* we stated:

> We cannot say that requiring DNA samples from incarcerated felony sex offenders bears a "proper relation" to joint and several liability for acts of negligence. While the expungement of a DNA record may arguably relate to the "business of the courts", Chapter 47's main purpose is to assist in the investigation and apprehension of criminals. The germane standard is not a high one, but Act 57 does not satisfy it.

*DeWeese*, 824 A.2d at 370. Thus, in disposing of the preliminary objections, this Court quite properly concluded that the single subject requirement of Article 3, Section 3 was violated by the joining of joint and several tort liability and the amendment and codification of the DNA Act in a single bill.[11] As a result, Respon-

---

11. *See also City of Philadelphia,* 575 Pa. at 580, 838 A.2d at 589 ("[W]hether or not it is akin to 'the business of the courts' or 'the economic well being of the commonwealth'— proffered topics which, as noted above have been deemed overly broad to constitute a single subject for constitutional purposes— 'municipalities' is the subject of an entire Title of the Pennsylvania Consolidated Statutes. By purporting to make general and diverse changes to that topic, with no other qualifications, SB 1100 is in substance an omnibus bill, whether or not it is called that in name."); *Poor District Case No. 1,* 329 Pa.

dent's and Intervenors' assertion to the contrary is without merit.

■ With respect to the codification exception of Article 3, Section 3, in *DeWeese* we stated that this exception was limited to statutes "[t]hat have previously been enacted [and] are simply being readopted in codified form...." *DeWeese*, 824 A.2d at 370 n. 14. Contrary to Respondent's and Intervenors' assertion, this Court quite properly limited this exception to the foregoing circumstance. As the Pennsylvania Supreme Court subsequently noted:

> The scope of Section 3's exception must be construed consistent with the reason it came into being. "What the amendment has done is authorize the adoption of the Consolidated Statutes and remove all doubt about the constitutionality of the existing codes." WOOD-SIDE, PA. CONSTITUTIONAL LAW, at 309. Such bills often contain more than one subject, but, because they do not effect substantive changes in the law, they lack the potential for mischief that Section 3 was intended to remedy. Thus, we do not believe that the electorate, in ap-

proving the amendment to Section 3, intended to give the Legislature license to include, within any bill consolidating an existing statute, unrestricted substantive revisions to the law unrelated to the process of codification, as otherwise the one-subject provision would be of little value....

> In light of the above, we conclude that the exception to the single-subject requirement for legislation "codifying ... the law or a part thereof" pertains to bills which codify the law and make only such alterations in form and content as are necessary to effect the codification. *See* [*DeWeese*, 824 A.2d] at 370 n. 14....

*City of Philadelphia*, 575 Pa. at 584, 838 A.2d at 592.

In short, in *DeWeese*, this Court properly determined that the enactment of Act 57 violated the single subject requirement of Article 3, Section 3 of the Pennsylvania Constitution. Likewise, in *DeWeese*, this Court also properly determined that the codification exception in Article 3, Section

---

390, 399–400, 197 A. 334, 339 (1938) ("[T]here is no violation of this clause when various subjects are connected with and germane to the one general object of the legislation. Plurality of subjects is not objectionable so long as they are reasonably germane to each other. Only when its subjects are dissimilar is a law to be stricken down.") (citations omitted); *Mallinger v. City of Pittsburgh*, 316 Pa. 257, 261, 175 A. 525, 526 (1934) ("[T]he constitutional provision (article 3, § 3) ... was intended merely to prohibit the practice of passing what were known as 'omnibus' bills, containing subjects foreign to each other, and whose title was on that account calculated to mislead and deceive; and a bill may still contain any number of provisions properly connected with and germane to the expressed subject, without violating the constitutional requirement....."); *Booth & Flinn v. Miller*, 237 Pa. 297, 303, 85 A. 457, 458 (1912) ("[T]he purpose of the section in

question was, as we have frequently said, to strike down omnibus bills which unite in the same law subjects entirely foreign to and not connected with each other, thereby giving no notice of the greater part of the contents of the bill and affording opportunity for fraud and deception. It is, however, no infringement of the section if there are several provisions in the bill, provided they are connected with and germane to the one general subject of the legislation. It is sufficient if they relate to and are a means of carrying out the one general purpose of the act...."); *Payne*, 168 Pa. at 389, 31 A. at 1074 ("[T]hose things which have 'a proper relation to each other; which fairly constitute parts of a scheme to accomplish a single general purpose', 'relate to the same subject', or 'object'. And provisions which have no proper legislative relation to each other and are not part of the same legislative scheme, may not be joined in the same act....").

3 was not applicable in this case.[12,13]

Accordingly, Petitioners' motion for summary judgment is granted, Respondent's and Intervenors' cross-motions for summary judgment are denied, and Act 57 of 2002 is declared to be unconstitutional and void.

Judge COHN JUBELIRER and Judge LEAVITT did not participate in the decision in this case.

### ORDER

AND NOW, this 26th day of July, 2005, the motion for summary judgment of H. William DeWeese, House Minority Leader and Member of the House Rules Committee, and Mike Veon, Democratic Whip of the House of Representatives is GRANTED; the cross-motions for summary judgment of C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania, John M. Perzel, Speaker of the House of Representatives, and Robert C. Jubelirer, President *Pro Tempore* of the Senate are DE-

NIED. The Act of June 19, 2002, P.L. 394 is hereby declared UNCONSTITUTIONAL and VOID.

---

12. *See City of Philadelphia*, 575 Pa. at 586, 838 A.2d at 593, wherein the Pennsylvania Supreme Court stated the following, in pertinent part:

> For the reasons expressed above, we find that SB 1100 violates Section 3's prohibition against multi-subject bills. As it would be arbitrary to preserve one set of provisions germane to one topic, and invalidate the remainder of the bill, we have no choice but to conclude that Act 230 must be declared unconstitutional in its entirety.[23]
>
> * * *
>
> 23. We contrast this situation with cases in which the title contains a single subject, and the Court strikes down only that portion of the bill which is not pertinent to that subject as violative of Section 3's clear expression requirement. *See, e.g., In re Phillips' Estate*, 295 Pa. 349, 353, 145 A. 437, 438 (1929); *Strain v. Kern*, 277 Pa. 209, 211, 120 A. 818, 819 (1923). Here, the multiple subjects, including the changes to the Convention Center Authority Act, are reflected in the bill's title.

13. Respondent and Intervenors also submit that although Petitioners raised a claim that the enactment of Act 57 violated Article 3,

Section 3's clear title requirement, they have waived this claim by failing to raise a clear title challenge in their brief filed in support of their motion for summary judgment. Moreover, they contend that even if this claim has not been waived, it is without merit as the title in this case clearly met constitutional muster. However, based on our foregoing determination that the enactment of Act 57 violated the single subject requirement of Article 3, Section 3, and that the codification exception does not apply, we need not address the issue of the clear title requirement of Article 3, Section 3. Likewise, based upon our determination that the enactment violated the provisions of Article 3, Section 3, we will not address Petitioners' claims that its enactment violated Article 3, Sections 2 and 4 as well. *See, e.g., City of Philadelphia*, 575 Pa. at 586, 838 A.2d at 593 ("[A]s discussed, in addition to challenging the validity of SB 1100 under Article III, Section 3, Petitioners assert that SB 1100 violates Article III, Sections 1, 4 and 6 of the Pennsylvania Constitution. As we have already determined that the bill must be invalidated in its entirety under Section 3, we need not reach these claims.").