J. A10014/17

2017 PA Super 415

| | | |
|---|---|---|
| WILLIAM C. ROVERANO AND JACQUELINE ROVERANO, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN CRANE, INC. AND BRAND INSULATIONS, INC. | : | |
| | : | |
| APPEAL OF: BRAND INSULATIONS, INC. | : | |
| | : | No. 2837 EDA 2016 |

Appeal from the Order July 27, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 1123

| | | |
|---|---|---|
| WILLIAM C. ROVERANO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN CRANE, INC., | : | |
| | : | |
| APPELLANT | : | |
| | : | No. 2847 EDA 2016 |

Appeal from the Order July 27, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2014 No. 1123

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

OPINION PER CURIAM:                                **FILED DECEMBER 28, 2017**

Appellants, John Crane, Inc., and Brand Insulations, Inc., appeal from the July 27, 2016 Order denying Post-Trial Motions and entering Judgment in favor of Appellees William and Jacqueline Roverano. We affirm in part, reverse in part, and remand for a new trial to apportion damages among the tortfeasors.

We briefly summarize the relevant facts, as gleaned from the certified record, as follows.

Appellee William Roverano was employed at PECO from 1971 until his retirement in 2001. As part of his employment, Mr. Roverano was exposed to a variety of asbestos products over a ten-year period from 1971 until 1981.

In November of 2013, Mr. Roverano was diagnosed with lung cancer in both lungs. Despite extensive treatment, his prognosis is poor.

On March 10, 2014, Mr. Roverano filed a Complaint against thirty named defendants, averring that exposure to asbestos products attributable to those defendants caused his lung cancer.[1] In addition, Mrs. Roverano made a claim for loss of consortium.

Prior to trial, the trial court ruled that the Fair Share Act, 42 Pa.C.S. § 7102, did not apply to asbestos cases.

At trial, the parties presented evidence that focused primarily on Roverano's exposure to Appellants' products that contained asbestos and whether such exposure caused Roverano's lung cancer. The thrust of Appellants' defense was that it was Roverano's history of smoking that caused his lung cancer and any exposure to Appellants' products was insignificant and could not have caused his lung cancer. In contrast,

---

[1] More than a dozen of those named defendants had filed for bankruptcy. Of the remaining named defendants, all but Appellants Crane and Brand settled with the Roveranos prior to the jury's verdict.

Appellees' experts opined that it was both his smoking and the exposure to Appellants' products that caused his lung cancer.

After deliberating, the jury found in favor of Mr. and Mrs. Roverano and against the Appellants as well as six of the eight other defendants. The jury awarded $5,189,265 to Mr. Roverano and $1,250,000 to Mrs. Roverano.

Appellants filed separate Motions for Post-Trial Relief. On July 27, 2016, the trial court denied Appellants' Motions and entered judgment in favor of the Roveranos. The trial court apportioned the judgment equally among the eight defendants whom the jury determined to be tortfeasors. In particular, the trial court entered separate judgments against Appellant Crane and Appellant Brand each in the amount of $648,858 plus $29,604 for delay damages for the verdict in favor of Mr. Roverano and $156,250 for the verdict in favor of Mrs. Roverano.

Appellants timely appealed. The trial court did not order, and Appellants did not file, a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Although Appellants have filed separate briefs, the issues raised are largely overlapping. We, therefore, paraphrase and re-number the collective issues Appellants raised as follows:[2]

---

[2] Appellant Crane also argues in one paragraph that we should reverse the trial court because its errors are cumulative. Since Appellant does not develop this argument or cite any law or references to the record to support this argument, we find this argument waived. **See *J.J. DeLuca Co., Inc. v.***

1.   The trial court erred in defining "factual cause" in its instructions to the jury and in response to a written question from the jury.

2.   The trial court erred by denying Appellant Crane's proposed Verdict Form that addressed whether Roverano's injuries were caused by exposure to asbestos, or, as Appellant Crane maintains, smoking.

3.   The trial court erred by failing to provide the jury a Verdict Form that allowed them to determine whether Appellant Crane's packing was defective in the absence of a warning.

4. The trial court erred by allowing Roveranos' experts to offer "each and every" or "whatever" asbestos exposure causation testimony in a case where Roverano did not have mesothelioma, asbestosis, or any other medical marker of asbestos exposure.

5. The trial court erred when it refused to mold the verdict to account for named-defendants Georgia Pacific Cement and Hajoca Corporation.

6.   The trial court erred in failing to apply the Fair Share Act and erred specifically as follows:

A.   The trial court should have required the jury to apportion liability among the alleged tortfeasors; and

B.   The trial court should have included certain alleged tortfeasors on the verdict sheet, notwithstanding the fact that those alleged tortfeasors had filed for bankruptcy protection, or to mold the verdict to reflect settlement payments received from the bankruptcy estates of alleged tortfeasors

Appellant Crane's Brief at p. 5-6; Appellant Brand's Brief at p. 3.

---

***Toll Naval Associates***, 56 A.3d 402, 412 (Pa. Super. 2012) (citing Pa.R.A.P. 2119).

**Standard of Review**

Our standard of review on appeal is a clear abuse of discretion or an error of law that controls the case:

> Our standard of review regarding a trial court's denial of a motion for a new trial is limited. The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case.

***Maya v. Johnson and Johnson***, 97 A.3d 1203, 1224 (Pa. Super. 2014) (citation omitted). When determining whether the trial court committed an error of law controlling the outcome of the case, "our standard of review is *de novo,* and our scope of review is plenary." ***Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc.***, 42 A.3d 951, 960 (Pa. 2012).

## 1. Factual Cause Jury Instructions

Appellants argue that the trial court erred in defining "factual cause" in its instructions to the jury and in response to a written question from the jury. In particular, Appellants argue that the "law requires a 'but for' causation standard for the definition of factual [causation], which was an error of law that controlled the outcome of the case." Crane's Brief at 30.

This Court reviews a challenge to jury instructions under the following well-settled principles of Pennsylvania law.

> [O]ur standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court

committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

Further, a trial [court] has wide latitude in [its] choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law.

*Phillips v. Lock*, 86 A.3d 906, 916–917 (Pa. Super. 2014) (citation omitted).

In asbestos products liability cases, "Pennsylvania law requires that a plaintiff prove two elements: "that the product was defective, and that the defect was **the substantial factor** in causing the injury." **Rost v. Ford Motor Company,** 151 A.3d 1032, 1037 n.2 (Pa. 2016) (citations omitted; emphasis added.). When a plaintiff was exposed to more than one product that contained asbestos, the jury, when applying the "substantial factor" test, should consider the "frequency, regularity and proximity" of the plaintiff's exposure to each asbestos product. **Gregg v. V-J Auto Parts Co.**, 943 A2d 216 (Pa. 2007). This assessment requires a "focus on the precise nature of plaintiff's exposure **to the defendant's product**, not on other asbestos containing product." **Rost,** 151 A.3d at 1048 (emphasis in original).

When a jury focuses on the defendant's product, the jury should consider the plaintiff's exposure to each defendant's product "was on the one hand, a substantial factor or a substantial cause or, on the other hand,

whether the defendant's conduct was an insignificant cause or a negligible cause." *Id.* at 1049 (quoting ***Ford v. Jeffries***, 379 A.2d 111, 114 (Pa. 1977)).

The Supreme Court concluded that it has never "insisted that a plaintiff exclude every other possible cause for his or her injury and in fact, we have consistently held that multiple substantial causes may combine and cooperate to produce the resulting harm to the plaintiff." ***Rost, supra*** at 1051.

Finally, the ***Rost*** Court noted with approval the analysis in **Tragarz v. Keene Corp.,** 980 F.2d 411 (7th Cir. 1992), adopted by ***Gregg, supra at*** 226, that rejected any notion that the test of "frequency, regularity and proximity" requires a comparative analysis of different exposures to asbestos and instead made clear that the focus must be on the level of exposure to the defendant's product. ***Rost, supra*** at 1050 n.13. Using this analysis, our Supreme Court rejected a "but for" causation analysis.

> Suppose a plaintiff shows that the amount of exposure that it received from defendant's A's asbestos product was alone sufficient to cause mesothelioma. If such a plaintiff was not exposed to any other products, the plaintiff would have sufficient evidence to support a finding that but for exposure to the defendant A's product, the plaintiff would not have gotten ill. On the other hand, under a [comparative approach], if the plaintiff was exposed to numerous other asbestos products, the plaintiff might not be able to prove cause in fact in a suit against defendant A because the same exposure to defendant A's product might not be substantial in comparison to the exposure to the other products. Such a result does not promote the purposes of the substantial factor test, which is aimed at

> alleviating the inequities that result when applying the but for test in a multi-defendant case, not at creating such inequities.

**Id**., quoting **Tragarz**, 980 F.2d at 425 (emphasis omitted).

Based on our review of the foregoing precedential authority, we conclude that the trial court in the instant case properly rejected Appellant's request for a "but for causation" jury charge. The Pennsylvania Supreme Court has clearly rejected such a standard for causation and requires, when addressing a situation in which a plaintiff is exposed to more than one asbestos containing products, that the jury determine whether the plaintiff's exposure to each defendant's product was "frequent, regular and proximate" to determine whether such exposure was a substantial factor in causing the plaintiff's injury.

Appellants further argue that the "trial court's instruction did not provide a sufficient and correct legal basis to guide the jury." Crane's Brief at 33.

> First, while explaining the Verdict Sheet, the court stated:
>
> The first question I said deals with exposure to the particular product of the defendant. Now, these are the elements the plaintiff has to prove that exposure. Number one, was the plaintiff exposed to the product of the defendant, did it contain asbestos, was the plaintiff exposed to the asbestos fibers of that particular defendant on a regular frequent and proximate basis.
>
> Now, the second question deals with whether these products manufactured, distributed, or supplied by the individual defendants was a factual cause in bringing about the plaintiff's lung cancer. In other words, did this exposure, if you find it, was it a factual cause in bringing about his lung cancer, did the

plaintiff suffer from an asbestos-related disease, the lung cancer, that is, was it caused by the exposure.

N.T., 4/13/16, at 336-37; RR 687a.

After the attorneys made their closing arguments, the court explained to the jury the need for Mr. Roverano to establish that he was exposed to the asbestos fibers that Appellants had manufactured, distributed or supplied on a "regular, frequent and proximate basis." N.T. at 122; RR. 709a. The court then instructed the jurors on the definition of factual cause as:

> And here the question is, were the asbestos products manufactured, distributed or supplied by that particular defendant, John Crane, Brand Insulation, you discuss these separately, was it a factual cause in bringing about lung cancer.
>
> In short, did the plaintiff suffer from an asbestos-related disease, that is, was the lung cancer an asbestos-related disease.
>
> Now, what do I mean by factual cause? Well, you imagine with lawyers and with judges there's been a lot of discussion as to what do we mean by factual cause. I used to use the word substantial factor. I think they mean the same, but today we're using factual cause.
>
> Factual cause is a legal cause. In order for the plaintiff to recover in this case, the exposure to the defendant's asbestos products must have been a factual cause in bringing about his lung cancer. This is what the law recognizes as a legal cause.
>
> A factual cause is an actual real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with Mr. Roverano's lung cancer.

N.T. at 118-19; RR at 708a.

By instructing the jury that Mr. Roverano must establish that his exposure was regular, frequent, and proximate and such exposure was a

substantial cause of plaintiff's lung cancer, the trial court "fully and adequately convey[ed] the applicable law." ***Philips***, 86 A.3d at 916-17. We, thus, conclude the trial court did not abuse its discretion or commit an error of law.

Appellants also argue that the trial court erred in responding to the jury's question regarding the definition of "factual" cause. Crane's Brief at 34; Brand's Brief at 29. In response to the question, the trial court charged the jury correctly by instructing the jury that factual cause is "legal cause, sometime referred to as substantial factor:"

> Factual cause is a legal cause, sometimes referred to as substantial factor, but it's the same—in my opinion they're the same definition, so I'm going to give you the definition of factual cause as a legal cause.
>
> In order for the plaintiff to recover in this case, the exposure to defendant's products based on the elements that I gave you must have been a substantial—must have been a factual cause in bringing about Mr. Roverano, the plaintiff's lung cancer. This what the law recognizes as legal cause.
>
> A factual cause is a real actual-a factual cause is an actual real factor, although the result may be unusual or expected, but it is not an imaginary or fanciful factor or a factor having no connection or only an insignificant connection with the lung cancer.
>
> Keep in mind you could have more than one cause which is a factual cause, but that's for you to decide. If you've got a couple of causes and you say one is not a factual cause and one is, the it can only be the one that you find the factual cause, but you can find that both were factual cause. That's up to you. You're the factfinders.

N.T. at 136-37; RR 712a.

Appellants contend that the court's response to the jury's inquiry was improper because it "changed [the jury's] mind." Crane's Brief at 37; **see also** Brand's Brief at 32-33. The trial court properly instructed the jurors on the law. It is for the jurors to apply the law and determine liability. We can only focus on the trial court's instruction to the jury and not speculation about the timing of the jury's verdict.

## 2. Causation Question on Verdict Sheet

Appellant Crane argues that a principal theory of Appellants' defense "was that Mr. Roverano's lung cancer was **not** caused by his exposure to asbestos at all; rather [the cancer,] along with his emphysema and COPD, was caused by his extensive smoking history." Crane's Brief at 29. Appellant contends that by denying a specific question on the Verdict Sheet reflecting this theory, the trial court precluded Appellant Crane from presenting this theory to the jury. **Id**.

This is a challenge to the trial court's discretion in fashioning questions on the Verdict Sheet and we review such challenges for an abuse of discretion. "An abuse of discretion is more than just an error of judgment and, on appeal, a trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." **Commonwealth v. Lane**, 424 A.2d 1325, 1328 (Pa. 1981) (citation and internal quotation marks omitted).

Appellant Crane argues that the trial court should have specifically included a question on the Verdict Sheet about whether smoking caused Mr. Roverano's lung cancer.

The questions on the Verdict Sheet were as follows:

1. "Was the Plaintiff, Mr. Roverano, **exposed** to asbestos products manufactured, distributed or supplied by Defendant, John Crane, Inc.

2. Were the asbestos products manufactured, distributed, or supplied by John Crane, Inc, a **factual cause** in bring about the Plaintiff's lung cancer."

RR 1058a-1059a (emphasis added.).

In explaining the second question, the trial court instructed the jury, *inter alia*: "In other words, did this exposure if you find it, did the plaintiff suffer from an asbestos-related disease, the lung cancer, that is was it caused by the exposure." N.T., 4/13/16, at 37; RR 687a.

The purpose of the Verdict Sheet is to provide a general guidepost to the jury of the general issues the jury must decide. It is not to reflect either party's specific theories.

In this case, the second question about factual cause on the Verdict Sheet required the jury to consider whether it was smoking that caused Mr. Roverno's lung cancer. If the jury had found that it was smoking that had caused Mr. Roverano's lung cancer, the jury would have answered "no" to the second question.

- 12 -

Therefore, we conclude that the trial court did not abuse its discretion by denying Appellant's request to include a question on the Verdict Sheet that reflected its theory of the case.

### 3. **"Unreasonably Dangerous" Question on Verdict Sheet**

Appellant Crane also argues that the trial court erred by failing to provide the jury a question on the Verdict Sheet asking the jury whether Crane's asbestos products were "unreasonably dangerous" and thus, defective.

The trial court rejected Crane's request for such a question because "the issue in this case was one of exposure and causation, not an issue of the defect of the product." Trial Ct. Op., dated 7/25/15, at 6. The trial court further noted that "neither defendant disputed that their products contained asbestos without proper warnings. Their defenses were based on the fact that the exposure to their products was minimal at best or, as with Crane, encapsulated." *Id.* The trial court concluded that "[a] question about defect was irrelevant." *Id*. at 7.

We agree with the trial court's conclusions that the trial was primarily focused on exposure and causation. Appellant did not dispute that its product contained asbestos. As discussed above, the questions on the Verdict Sheet are to provide generalized guideposts to the jurors. To add a question about defect when the parties did not present evidence on the issue

or argue about it in their opening or closing statements would have confused the jury.

Moreover, the trial court properly relied upon the analysis in ***Moore v. Ericsson***, 7 A.3d 820 (Pa. Super. 2010), in which this Court noted with approval the trial court's determination ***as a matter of law*** that wire and cable containing asbestos was defective. ***See id***. at 826.

> As the trial judge stated, the issue was *not* whether a product was defective because it contained asbestos; "instead, the trial issues, and therefore the factual issues remaining for the jury were limited to whether the Defendant's particular product contained asbestos, whether the Plaintiff was exposed to it, and whether such exposure caused Plaintiff's mesothelioma." We find no error or abuse of discretion.

***Id***. (citing Trial Court Opinion).

As the trial court in the instant case noted, "neither defendant disputed that their products contained asbestos without proper warnings." Trial Ct. Op. at 6. Therefore, the trial court properly rejected Appellant Crane's request that the Verdict Sheet contain a question about whether the asbestos was unreasonably dangerous and limited the questions on the Verdict Sheet to whether Appellee was exposed to the defendant's asbestos and whether that exposure caused his lung cancer.

### 4. **"Each and Every" Exposure Testimony**

Appellant Crane argues that the trial court erred by allowing Roveranos' experts to offer evidence that "each and every" or "whatever"

asbestos exposure caused Mr. Roverano's injury where Mr. Roverano did not have mesothelioma, asbestosis, or any other marker of asbestos exposure.

We disagree with Appellant Crane's characterization of the expert testimony of the Roveranos. A review of the entire testimony of the Roverano experts demonstrates that Roveranos' experts did not testify that it was a single exposure to the Appellants' products that caused Mr. Roverano's lung cancer; rather, that it was multiple exposures that were a substantial factor in causing Roverano's lung cancer.

For instance, Dr. Frank testified at length that both smoking and regular, proximate, and frequent exposure to asbestos in Appellant Crane's products caused Mr. Roverano's lung cancer. Dr. Frank first testified about general causation:

> Cigarette smoking causes lung cancer. Asbestos exposure causes lung cancer. When you put the two together, is there some interaction between the two that increases the possibility of getting lung cancer, and the answer is yes. And there are numbers on this and it varies depending on which study you look at which time…So there is what we call a multiplicative or synergistic response. And again other studies vary by what that number. Some are higher, some are lower, but it more than simply an additive effect when you put the two together.

N.T., 4/7/16, at 36-38; RR. 533a-34a.

Dr. Frank later provided testimony regarding specific causation by testifying that based upon Mr. Roverano's testimony of his regular, proximate, and frequent exposure to Appellant Crane's asbestos products, that, to a degree of medical certainty,

whatever exposure Mr. Roverano had to John Crane packing products as described in the hypothetical would have been a substantial contributing cause or would have been a factual cause of his lung cancer and would have added to his total exposures, were part of his cumulative exposure and therefore are part of what caused his lung cancer."

N.T., at 63; RR R540a.[3]

Dr. Frank did not base his conclusions on the premise that Mr. Roverano had a single exposure to asbestos. In fact, Appellant Crane failed to point to testimony of any expert who based his opinion on the premise of a single exposure.

Appellant Crane argues that the trial court should have precluded the Roverano's experts' opinions because they failed to provide "any serious assessment of the causal attribution by assessing the frequency, regularity and proximity of Mr. Roverano's exposure to JCI's products." Appellant Crane's Brief, at 40, citing **Rost**, **supra**. By characterizing the experts' testimony as lacking "any serious assessment," Crane's averment challenges the weight, not the admissibility, of the evidence.

It is within the province of the jury to determine the weight to give the evidence and this Court will not disturb the fact-finder's weight

---

[3] Dr. Frank also opined that "the Brand Insulation materials to which Mr. Roverano was exposed to were a factual cause and contributed to his developing his lung cancer. The basis of that is the same, that it's part of his cumulative exposure, it added to his risk, and when he got the disease, you have to say it was one of the factors that contributed to the totality of his dose which ended up giving his lung cancer." N.T., 4/7/16, at 67; RR. 541a.

determination. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (noting that "the weight of the evidence is exclusively for the finder of fact" and "an appellate court cannot substitute its judgment for that of the finder of fact."). Accordingly, we will not disturb the factfinder's weight determination.

Appellant also avers that "the Plaintiff's experts' testimony should additionally have been barred because this is not a mesothelioma case." Crane's Brief at 43. Again, Crane's argument pertains to the weight, not the admissibility, of the evidence.

Appellants presented evidence that asbestos exposure can only cause mesothelioma,[4] and argued that because Mr. Roverano developed lung cancer, it had demonstrated that it was not asbestos that caused his lung cancer. However, Dr. Frank testified on this general causation factor and concluded that exposure to asbestos can cause lung cancer. Dr. Gelfand also testified that, based on the medical literature and his experience, Mr. Roverano's exposure to asbestos was a "substantial contributing factor to his lung cancer and to his poor prognosis for survival." ***See*** Crane Brief at 16-17, citing N.T. at RR 540a, 765a.

Appellant Crane essentially argues that because the jury believed the Roveranos' experts and not the Appellants' experts on the question of

---

[4] Mesothelioma is a cancer of the lining of the lungs. ***Gregg v. V-J Auto Parts Co.***, 943 A.2d 216, 217 (Pa. 2007).

general causation, the court erred in permitting the experts to testify. We decline to disturb jury's weight determination.

5. **<u>Molding the Verdict to Include Non-Liable Defendants</u>**

Georgia Pacific Cement and Hajoca Corporation were both included on the Verdict Sheet, and the jury was specifically instructed to determine whether either named defendant "manufactured, distributed, or supplied" products which "were factual causes in bringing about Plaintiff's lung cancer." Jury Verdict – Questions to be Answered by the Jury, filed 4/15/16, at 3. After hearing the evidence presented at trial, the jury found that Georgia Pacific Cement and Hajoca Corporation were **not** liable for the harm to Appellees. *Id.*

In light of the fact that the jury did not find that Georgia Pacific Cement and Hajoca Corporation to be tortfeasors,[5] the trial court did not err in refusing to mold the verdict to include them.

6. **<u>Fair Share Act</u>**

Appellants contend that the trial court erred as a matter of law by refusing to apply the Fair Share Act, 42 Pa.C.S. § 7102(a.1)-(a.2), to this case because the litigation involves exposure to asbestos. They argue that

---

[5] In light of our holding in the next section that finds that it is a jury who must apportion liability among tortfeasors, we note that since the jury did not find Georgia Pacific Cement and Hajoca Corporation to be tortfeasors, they should not be included in a jury determination apportioning damages among tortfeasors. *See* note 11, *infra*.

the Roveranos' claim falls within the ambit of the Act and that nothing in the plain language of the Act supports the trial court's decision to exempt asbestos litigation from the Act's requirements. We agree.[6]

Statutory interpretation is a question of law. Therefore, our standard of review is *de novo,* and our scope of review is plenary. ***Commonwealth v. Hall***, 80 A.3d 1204, 1211 (Pa. 2013). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." ***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 (Pa. 2009) (citation omitted).

Generally, a statute's plain language provides the best indication of legislative intent. ***In re Trust of Taylor***, 164 A.3d 1147, 1155 (Pa. 2017). We will look beyond the plain language of the statute only when the words are unclear or ambiguous, ***see id.***, or the plain meaning would lead to "a

---

[6] Application of the Fair Share Act to strict liability cases involving asbestos exposure is a question of first impression in this Court. Appellants argue that *dicta* in ***Rost*** 151 A.3d at 1044 n.7, another case dealing with personal injuries caused by exposure to asbestos, establishes that the Act applies to these cases. The cited footnote in ***Rost*** discussed policy issues underlying some of the Supreme Court's decisions regarding liability from asbestos exposure, including issues stemming from application of joint and several liability, and then added: "Pennsylvania has now eliminated joint and several liability in most cases through amendment of the Fair Share Act." This sentence is a far cry from a clear statement about the statute's application to asbestos cases, and, although we address this issue mindful of the Supreme Court's guidance in ***Rost***, we do not find the footnote determinative.

result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning. *Hall*, 80 A.3d at 1211.

The Fair Share Act was enacted in 2011 as an amendment to the section of the Judicial Code, 42 Pa. C.S. § 7102, that had provided for comparative negligence. *See* Act No. 2011-17, P.L. 778 (June 28, 2011). It replaced subsection (b) of that statute with two new subsections:

**(a.1) Recovery against joint defendant; contribution. —**

(1) Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).

(2) Except as set forth in paragraph (3), a defendant's liability shall be several and not joint, and the court shall enter a separate and several judgment in favor of the plaintiff and against each defendant for the apportioned amount of that defendant's liability.

(3) A defendant's liability in any of the following actions shall be joint and several, and the court shall enter a joint and several judgment in favor of the plaintiff and against the defendant for the total dollar amount awarded as damages:

(i) Intentional misrepresentation.

(ii) An intentional tort.

(iii) Where the defendant has been held liable for not less than 60% of the total liability apportioned to all parties.

(iv)   A release or threatened release of a hazardous substance under section 702 of the act of October 18, 1988 (P.L. 756, No. 108), known as the Hazardous Sites Cleanup Act.

(v)   A civil action in which a defendant has violated section 497 of the act of April 12, 1951 (P.L. 90, No. 21), known as the Liquor Code.

(4) Where a defendant has been held jointly and severally liable under this subsection and discharges by payment more than that defendant's proportionate share of the total liability, that defendant is entitled to recover contribution from defendants who have paid less than their proportionate share. Further, in any case, any defendant may recover from any other person all or a portion of the damages assessed that defendant pursuant to the terms of a contractual agreement.

**(a.2) Apportionment of responsibility among certain nonparties and effect. —** For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party. A person whose liability may be determined pursuant to this section does not include an employer to the extent that the employer is granted immunity from liability or suit pursuant to the act of June 2, 1915 (P.L. 736, No. 338), known as the Workers' Compensation Act. An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose. Nothing in this section shall affect the admissibility or nonadmissibility of evidence regarding releases, settlements, offers to compromise or compromises as set forth in the Pennsylvania Rules of Evidence. Nothing in this section shall affect the rules of joinder of parties as set forth in the Pennsylvania Rules of Civil Procedure.

42 Pa. C.S. § 7102(a.1)-(a.2). The Act applies to claims that accrued after June 28, 2011, and the parties agree that the Roveranos' claims did not accrue before that time.

One of the main purposes of the Fair Share Act was to make joint and several liability inapplicable to most tort cases. The statute accomplished that objective in subsection (a.1)(2), which states that, apart from a limited class of excepted cases, "a defendant's liability shall be several and not joint, and the court shall enter a separate and several judgment in favor of the plaintiff and against each defendant for the apportioned amount of that defendant's liability." The Act's lengthy other provisions make clear, however, that the statute is not limited only to restricting joint and several liability. Rather, insofar as is relevant here, the Act also made several adjustments to the rules for allocating liability among joint tortfeasors.

Before enactment of the Fair Share Act, the Comparative Negligence Act provided for proportionate recovery against negligent joint tortfeasors according to a percentage determination that was made by the fact-finder:

> Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. . . .

42 Pa. C.S. § 7102(b) (deleted 2011); *see Embrey v. Borough of West Mifflin*, 390 A.2d 765, 769 (Pa. Super. 1978) (role of jury in allocating liability). Liability among joint tortfeasors who were strictly liable was not covered by the statute and, under court decisions, was calculated on a per

capita[7] basis — that is, if five defendants were found strictly liable, each would be allocated 20% of the liability regardless of how much each defendant's conduct contributed to the injury. *See Baker v. ACandS*, 755 A.2d 664, 669 (Pa. 2000); *Walton v. Avco Corp.*, 610 A.2d 454, 462 (Pa. 1992).

One of the new Fair Share Act provisions enacted to replace Section 7102(b) was Section 7102(a.1)(1), which employed language similar to that in Section 7102(b), but applied it to both negligent and strictly liable joint tortfeasors:

> Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).

42 Pa. C.S. § 7102(a.1)(1). A principal question in this case is whether, and to what extent, this provision changed the way to allocate liability among strictly liable joint tortfeasors.

Prior to trial, several defendants, including Brand and Crane, filed a motion *in limine* seeking a ruling that their liability, if any, would be apportioned by the jury according to the extent to which each defendant

---

[7] Consistent with some of the case law, Appellees call this a "pro rata" allocation. Appellants use "per capita," and that term provides a clearer description of the result. The different terminology does not imply any substantive difference in the way liability was determined.

caused harm to Mr. Roverano. The court heard argument on that motion on April 5, 2016, and summarized the motion as follows:

> [W]hat you're saying is that you want an apportionment — rather than per capita, you want an apportionment instruction to the jury and you want the jury to actually apportion the share of liability if they reach that issue.

Tr., 4/5/16, at 9. The court then explained why it would deny the motion:

> Here is my difficult[y] with this and why I've denied it in the past and I will here and you all have an exception, is that all of the testimony I've ever heard in asbestos, no one quantifies it. They say that you can't quantify it. If you can't quantify it, how can the Fair Share Act apply?

*Id.* at 9-10. After a discussion during which defense counsel proposed possible ways of proving an allocation, the trial court reiterated that the motion *in limine* was denied. *Id.* at 10-16. In its post-trial opinion, the trial court stated that it "properly denied [Appellants'] motion to apply the Fair Share Act to this case" because the jury was not presented with evidence that would permit an apportionment to be made by it. Trial Ct. Op., 7/27/15, at 9-10.

In holding that the Fair Share Act did not "apply" to this case, the trial court erred. This was an action to hold Appellants strictly liable in tort for injuries allegedly caused by asbestos-containing products that they made or distributed, and the Fair Share Act explicitly applies to tort cases in which "recovery is allowed against more than one person, **including actions for strict liability**." 42 Pa. C.S. § 7102(a.1)(1) (emphasis added). Nothing in the statute makes an exception for strict liability cases involving asbestos.

Rather, Section 7102(a.1)(3) excepts only four specific kinds of tort actions — intentional misrepresentation, other intentional torts, certain environmental cases, and dram shop actions — and cases involving asbestos are not among them.

The Roveranos contend that Section 7102(a.1)(1)'s reference to strict liability actions was intended only to make clear that the Act's abrogation of joint and several liability applies to such cases. They contend that the Act is silent on how liability among strictly liable joint tortfeasors is to be apportioned, and that this silence means that apportionment may continue to be done in the same way as it was done before the statute's enactment — on a per capita basis. In support of this argument, they point out that Section 7102(a.1)(1) says only that each joint tortfeasor's liability shall equal "that proportion of the total dollar amount awarded as damages" that is calculated by determining "the ratio of the amount of that defendant's liability" to the total liability of all defendants. The Act does not specify how that ratio is to be determined, and therefore, they contend, the rule of per capita apportionment applicable before the Fair Share Act's enactment remains unchanged. We disagree. Rather, by explicitly making strictly liable joint tortfeasors subject to the same liability allocation section as that applicable to negligent joint tortfeasors, the Legislature made clear that it intended for liability to be allocated in the same way for each.

The fact that the Fair Share Act does not explicitly say how to allocate liability among strictly liable joint tortfeasors just means that the statute is ambiguous on that issue, not that the statute does not address it. ***See In re Trust of Taylor***, 164 A.3d at 1156 (a statute is ambiguous if it does not "contain[] any explicit language addressing the issue raised"). The statute is silent on the manner of calculating the ratio for **all** kinds of tort cases, not just strict liability cases. Any suggestion that the silence has special meaning for strict liability cases therefore is unfounded. There is nothing in the statute to suggest that the Legislature intended the ratio under Section 7102(a.1)(1) to be calculated one way for negligent tortfeasors and a different way for those strictly liable. Rather, the similarity between the language of former Section 7102(b) and new Section 7102(a.1)(1) suggests that the Legislature intended that the allocation method applicable to negligence cases was merely being expanded to apply to strict liability cases too. The "including actions for strict liability" clause in Section 7102(a.1)(1) supports this conclusion; this clause suggests that the allocations of liability that had been done by a jury in negligence cases now would "include" strict liability cases as well.

The Legislature's placement of the "including actions for strict liability" clause is revealing. If, as Appellees suggest, the Legislature intended only to make clear that the abrogation of joint and several liability applied to strict liability actions, it would have added that clause to Section

- 26 -

7102(a.1)(2), which abrogates joint and several liability. Instead, the Legislature added that clause to Section 7102(a.1)(1), which deals with allocation of liability among joint tortfeasors. By doing so, the Legislature clearly intended to make a change in the allocation rules that applied before the Fair Share Act's enactment, which called for a fact-based allocation in negligence cases and a per capita allocation in strict liability cases. If the Legislature did not intend to change those rules, there would be no reason to add the "including actions for strict liability clause" to Section 7102(a.1)(1).

A comparison of Section 7102(a.1)(1) to the language of Section 7102(b) that it replaced shows that the Legislature accomplished its objective by changing the allocation components from —

> the amount of [the tortfeasor's] **causal negligence** to the amount of causal negligence attributed to all defendants against whom recovery is allowed

to —

> the amount of that defendant's **liability** to the amount of liability attributed to all defendants and other persons to whom liability is apportioned.

The inclusion of strict liability cases obviously accounts for the Legislature's replacement of "causal negligence" with "liability." Because this was the only change relevant to this issue that the Legislature made to its allocation formula,[8] this comparison again supports the view that the Legislature

---

[8] The Legislature also added the phrase, "and other persons to whom liability is apportioned," which we discuss below.

intended allocation of liability under Section 7102(b) to carry over under the new statute and to apply to strict liability cases in the same way as it had been done previously under the comparative negligence statute.[9]

The structure and context of the Fair Share Act as a whole thus support the view that Section 7102(a.1)(1) reflects the Legislature's intention to have a fact-finder allocate liability among joint tortfeasors in all types of cases, including strict liability cases. This conclusion is confirmed by the statute's history. *See* 1 Pa. C.S. § 1921(c)(7) ("When the words of a statute are not explicit, the intention of the General Assembly may be

---

[9] This case does not require us to opine on the factors that should be considered in allocating liability among strictly liable tortfeasors under Section 7102(a.1)(1). Prior law prohibited a fault-based allocation because of a desire in product liability actions at that time to "fortif[y] the theoretical dam between the notions of negligence and strict 'no fault' liability," *Walton*, 610 A.2d at 462, but that dam was cracked in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 376-81, 399-406 (Pa. 2014) (discussing and rejecting prior law's effort to completely divorce negligence and strict liability concepts). Even if there were still some reason to avoid a fault-based allocation method, it is not apparent on this record why liability among strictly liable tortfeasors may not be allocated by a jury without consideration of wrongdoing. A court may apportion liability when it is able to identify "a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A(1) (1965); *see Martin v. Owens-Corning Fiberglas Corp.*, 528 A.2d 947, 949 (Pa. 1987). Brand suggests that liability could have been apportioned here according to the amount of Mr. Roverano's potential exposure to each defendant's product. Brand's Br. at 19-20. Crane makes a similar argument that would factor in the potency of the type of asbestos to which Mr. Roverano was exposed (chrysotile versus amphibole). Crane's Br. at 45-46. These causation-based arguments clearly suggest bases for apportionment apart from fault. Their reasonableness is for the trial court to determine in the first instance, and the weight of their supporting evidence is a matter for the jury.

ascertained by considering, among other matters . . . [t]he contemporaneous legislative history").

The Act was a reenactment of substantially identical legislation enacted in 2002 that was later declared invalid because it was part of a bill addressing multiple subjects in violation of Article 3, Section 3 of the Pennsylvania Constitution. *See* Fair Share Act of 2002, Act No. 2002-57, P.L. 394 (June 19, 2002), *held invalid in DeWeese v. Weaver*, 880 A.2d 54, 62 (Pa. Cmwlth. 2005), *aff'd without opinion*, 906 A.2d 1193 (Pa. 2006). The 2002 statute was hotly debated in the Legislature, and during those debates the bill's floor manager in the House, Representative Mike Turzai, was asked the precise question that now is before this Court:

> Mr. GANNON. . . . Mr. Speaker, where you have a Pennsylvania manufacturer selling a product in Pennsylvania through a seller, a seller sells the product, it has got a manufacturing defect, how would that liability be apportioned under this law — proposed law; excuse me.
>
> Mr. TURZAI. Yes. If both of those defendants are present, as you have suggested, and you have strict liability claims, . . . you would not take into account the plaintiff's actions or the plaintiff's behavior in terms of reducing the ultimate award as you do in negligent situations. However, . . . you would apportion the damages between strict liability defendant number one and strict liability defendant number two. Let us assume they are 70-30 and you would go after strict liability one for the 70 and you would go after strict liability two for the 30 to the degree that the jury or the judge found them causally responsible.

2002 Pa. Leg. J. (House) 1199 (June 4, 2002).[10]  Representative Turzai's answer made clear that liability apportionment between two strictly liable tortfeasors would **not** be per capita, but instead would be based on "the degree that the jury or the judge found them causally responsible," in a manner similar to allocation among negligent joint tortfeasors.

At no time during the debates on the 2002 legislation or the 2011 legislation was there ever any suggestion that Representative Turzai's view of liability allocation under the statute was incorrect or that there would be any allocation among strictly liable joint tortfeasors on a per capita basis. Rather, throughout the debates, the repeated concern was about tortfeasors (both strictly liable tortfeasors and negligent tortfeasors) who would be allocated only a small percentage of liability;  the bill's opponents worried that if the legislation were enacted, recovery against such defendants would not make the plaintiff whole, while proponents worried that unless the bill were enacted such defendants would have to pay more than their fair share of the verdict.  No one suggested that these implications were different for strictly liable joint tortfeasors than for others.

In fact, the general understanding that strictly liable joint tortfeasors would have liability allocated in the same way as other tortfeasors led to the

---

[10] Representative Turzai later clarified that if one of the two defendants was 70% liable, the case would fall within the exception in Section 7102(a.1)(3)(iii) that permits that defendant to be held jointly and severally liable.  2002 Pa. Leg. J. (House) at 1199.  That clarification does not change the relevance of his answer for purposes of the issue in this case.

enactment of one of the exceptions in Section 7102(a.1)(3) of the Act. During the 2002 debates, there was concern about how the bill would affect recoveries in toxic tort actions, in which strict liability claims often are brought against multiple defendants. *See* 2002 Pa. Leg. J. (House) at 1204-05, 1213-14. As a result of those debates, the bill was amended to include Section 7012(a.1)(3)(iv), which preserves joint and several liability for certain strict liability environmental claims. *See* 2002 Pa. Leg. J. (Sen.) 1908-09 (June 12, 2002); 2002 Pa. Leg. J. (House) 1349-50 (June 17, 2002). The amendment shows that the Legislature believed allocation on a non-per capita basis in strict liability cases would be the rule, and that it had to enact an exception if it wanted a different rule.

Finally, the Legislature has instructed that we are to interpret a statute "to give effect to all its provisions." 1 Pa. C.S. § 1921(a); *see* ***Commonwealth v. Anderson***, 169 A.3d 1092, 1096 (Pa. Super. 2017) (*en banc*). But Appellees' interpretation would make an important provision of the Act, Section 7102(a.1)(3)(iii), inapplicable to strict liability actions. Section 7102(a.1)(3)(iii) was a compromise provision. It states that if a defendant is held liable for more than 60% of the liability in the case, joint and several liability applies to that defendant. This exception assures that those defendants who are substantially responsible for a plaintiff's injury will have to account for the full amount of the plaintiff's harm. But if liability in a strict liability case is per capita, it is mathematically impossible for any of

those defendants to reach the 60% threshold: with just two defendants, a defendant's liability can only be 50%, and the liability percentage will decrease as the number of defendants increases. That is not the result the Legislature intended.

We, therefore, conclude that liability in strict liability cases must be allocated in the same way as in other tort cases, and not on a per capita basis, and that the trial court erred in holding that the jury could not apportion liability pursuant to the Fair Share Act. Of course, apportionment by the jury will require submission of appropriate evidence from which the jurors may make an allocation. Questions regarding the nature of that evidence should be resolved by the trial court in the first instance on remand.

We also agree with Appellants that the jury on remand must be permitted to consider evidence of any settlements by the Roveranos with bankrupt entities in connection with the apportionment of liability. Section 7102(a.2) of the Fair Share Act states: "For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party." Under Section 7102(a.1)(1), the settling party's liability is included in the "amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2)" for

purposes of allocating liability among the joint tortfeasors. These provisions require that settlements with bankrupt entities be included in the calculation of allocated liability under the statute.[11]

Section 7102(a.2) contains no exception for settling persons who are bankrupt. Rather, the section refers to "**any** defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party." 42 Pa. C.S. § 7102(a.2) (emphasis added). The Roveranos claim, however, that our decisions in *Ottavio v. Fibreboard Corp.*, 617 A.2d 1296, 1300 (Pa. Super. 1992) (*en banc*), and *Ball v. Johns-Manville Corp.*, 625 A.2d 650 (Pa. Super. 1993), which prohibited consideration of settlements with bankrupt entities prior to enactment of the Fair Share Act, continue to bar consideration of such settlements here. Because *Ottavio* and *Ball* were based on policy considerations that do not apply under the Fair Share Act, we conclude that this argument is mistaken.

In *Ottavio*, the defendant, one of several manufacturers of products containing asbestos, objected to an apportionment of liability among such manufacturers on the ground that bankrupt manufacturers were not included in the calculation. *Ottavio*, 617 A.2d at 1300. In holding that the federal

---

[11] Appellants concede that this requirement is subject to the qualification that they "submit evidence to establish that the non-parties were joint tortfeasors." *See Amato v. Bell & Gossett*, 116 A.3d 607, 617 (Pa. Super. 2015), *appeal dismissed sub nom. Vinciguerra v. Bayer CropScience, Inc.*, 150 A.3d 956 (Pa. 2016). In addition, we agree with Appellees that Section 7102(a.2) does not apply to bankrupt entities (or their successors in interest) with whom they have not settled and received releases.

Bankruptcy Code prohibited inclusion of bankrupt companies in the calculation, we observed that an allocation of fault pursuant to the Comparative Negligent Act[12] made the other parties to the allocation joint tortfeasors against whom, under the then-prevailing rules of joint and several liability, another tortfeasor could seek contribution. That result would violate the automatic stay provisions of the Bankruptcy Code[13] and therefore was preempted by federal law. **See id.** In **Ball**, we reached the same result on the basis of our holding in **Ottavio**. **See Ball,** 625 A.2d at 660.

The Fair Share Act does not permit a similar result here. Not only does it do away with joint and several liability in most cases, but it contains the following mandate in Section 7102(a.2): "An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose." The Act thus **prohibits** use of an allocation against a bankrupt company as a basis for seeking contribution or any other recovery against that company; indeed, the Act makes the allocation finding **inadmissible** in any other case.

---

[12] The case apparently included a negligence claim.

[13] Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . [an] action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1), (6).

The finding, therefore, cannot expose the bankrupt company to any sort of claim forbidden by the Bankruptcy Code.  As a result, it does not conflict with the Code and is not preempted by it.[14]

This is the same conclusion as that reached by our colleague Judge Strassburger when he confronted this issue as a trial judge under the 2002 statute.  Finding cases like **Ball** and **Ottavio** "inapposite," he observed:

> Under the *Act*, it is a new ball game[.] The defendant in **Ball** was seeking a judgment against bankrupt entities. Clearly that would have violated the automatic stay. The new Act provides:
>
>> An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose.
>
> Thus, no judgment violative of the automatic stay can eventuate.

**Slayton v. Gold Pumps, Inc.**, No. GD 03-010873, 2004 Pa. Dist. & Cnty. Dec. LEXIS 335, *5 (C.P. Alleg., Oct. 25, 2004).  Courts in other jurisdictions have reached similar conclusions when confronted with legislation similar to the Fair Share Act.  **See, e.g.**, **Bondex v. Ott**, 774 N.E.2d 82, 87 (Ind. App.

---

[14] In this respect, we note that "there is a presumption *against* preemption." **Dooner v. DiDonato**, 971 A.2d 1187, 1194 (Pa. 2009) (emphasis in original).  A statute that is preempted by federal law is unconstitutional because it violates the Supremacy Clause (Art. VI, cl. 2) of the federal Constitution.  **Id.** at 1193.  But "acts passed by the General Assembly are strongly presumed to be constitutional," and "a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution."  **Pa. State Ass'n of Jury Comm'rs v. Commonwealth**, 64 A.3d 611, 618 (Pa. 2013) (citations and quotation marks omitted).  The presumption against preemption and corollary presumption against unconstitutionality strongly weigh against following **Ottavio** as a basis for declining to apply the Fair Share Act according to its terms.

2002); ***see also In re Shondel***, 950 F.2d 1301, 1306-07 (7th Cir. 1991) (discussing effect of bankruptcy discharge under Section 524 of Code).

For these reasons, we hold that the trial court failed to apply the Fair Share Act in the manner intended by the Legislature and that we therefore need to remand this case for a new trial on the question of apportionment of liability.

Judgment vacated. Order denying Post Trial Motions affirmed in all respects other than that portion dealing with the Fair Share Act; such portion of the Order is reversed. Case remanded for a new trial to apportion the jury verdicts among the Appellants, the non-bankrupt settling defendants (excluding Georgia Pacific Cement and Hajoca because the jury determined that they were not tortfeasors) and bankrupt settling defendants. Jurisdiction relinquished.

President Judge Emeritus Ford-Elliott joins this Opinion Per Curiam.

Judge Solano files a Concurring and Dissenting Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/17