**[J-10A&B-2019][M.O. - Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| WILLIAM C. ROVERANO AND JACQUELINE ROVERANO, H/W, | : | No. 26 EAP 2018 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| Appellants | : | Court entered on 12/28/17 at No. 2837 |
| | : | EDA 2016 affirming in part, reversing in |
| | : | part and remanding the order entered |
| v. | : | on 7/27/16 in the Court of Common |
| | : | Pleas, Philadelphia County, Civil |
| | : | Division at No. 1123 March Term, 2014 |
| JOHN CRANE, INC., AND BRAND INSULATIONS, INC., | : | |
| | : | |
| | : | |
| Appellees | : | ARGUED:  March 6, 2019 |
| | | |
| WILLIAM ROVERANO, | : | No. 27 EAP 2018 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered on 12/28/17 at No. 2847 |
| | : | EDA 2016 affirming in part, reversing in |
| v. | : | part and remanding the order entered |
| | : | on 7/27/16 in the Court of Common |
| | : | Pleas, Philadelphia County, Civil |
| JOHN CRANE, INC., | : | Division at No. 1123 March Term, 2014 |
| | : | |
| Appellee | : | |
| | : | |
| | : | ARGUED:  March 6, 2019 |


*CONCURRING AND DISSENTING OPINION*


**CHIEF JUSTICE SAYLOR**                    **DECIDED:  February 19, 2020**


I join Part IV of the majority opinion, which holds that, under the Fair Share Act,

bankrupt entities must be included on a verdict slip upon submission of "appropriate

requests and proofs," 42 Pa.C.S. §7102(a.2), and I support the affirmance of the award of a new trial for apportionment purposes. In all other respects, I respectfully dissent.

On the issue of comparative versus *per capita* liability allocation among strictly liable defendants, I find that the majority places undue reliance on the inertia associated with previously prevailing common law principles and attributes insufficient weight to the clear indicia of the Legislature's intent to proceed in a new direction by implementing a fair share or comparative responsibility regime.

Addressing the first issue presented, I agree with the Superior Court that, "by explicitly making strictly liable joint tortfeasors subject to the same liability allocation section as that applicable to negligent joint tortfeasors, the Legislature made clear that it intended for liability to be allocated in the same way for each." *Roverano v. John Crane, Inc.*, 177 A.3d 892, 906 (Pa. Super. 2017) (*per curiam*). Indeed, I believe that if the General Assembly had intended to do the opposite within the contours of a "Fair Share Act" -- *i.e.*, to maintain a liability allocation regime for strict liability cases that was not divided on comparative or fair share basis -- it would have so stated. This would seem to be all the more so given the substantial overlap between Section 7102(a.1)(1) and its predecessor. *See id.* at 907 ("[T]he similarity between the language of former Section 7102(b) and new Section 7102(a.1)(1) suggests that the Legislature intended that the allocation method applicable to negligence cases was merely being expanded to apply to strict liability cases too.").[1]

---

[1] The Superior Court offered the following apt comparison of the language of Section 7102(a.1)(1) to its predecessor:

> the amount of [the tortfeasor's] *causal negligence* to the amount of causal negligence attributed to all defendants against whom recovery is allowed
>
> to--

(continued…)

As the Superior Court explained:

> The Legislature's placement of the "including actions for strict liability" clause is revealing. If, as [the plaintiffs] suggest, the Legislature intended only to make clear that the abrogation of joint and several liability applied to strict liability actions, it would have added that clause to Section 7102(a.1)(2), which abrogates joint and several liability. Instead, the Legislature added that clause to Section 7102(a.1)(1), which deals with allocation of liability among joint tortfeasors. By doing so, the Legislature clearly intended to make a change in the allocation rules that applied before the Fair Share Act's enactment, which called for a fact-based allocation in negligence cases and a per capita allocation in strict liability cases. If the Legislature did not intend to change those rules, there would be no reason to add the "including actions for strict liability clause" to Section 7102(a.1)(1).

*Id.*. And, as the intermediate court further related, the legislative history is also strongly supportive of the straightforward application of the statute to provide for comparative liability as the general rule. *See id.* at 908 (referencing the remarks of the underlying bill's floor manager, the Honorable Michael C. Turzai, to the effect that comparative appointment of strict liability claims is required by the legislation).

---

(…continued)

> the amount of that defendant's *liability* to the amount of liability attributed to all defendants and other persons to whom liability is apportioned.

*Id.* at 907. Because the only change in the formula was the replacement of "causal negligence" with "liability" to account for the inclusion of strict liability claims, the conclusion naturally followed that "the Legislature intended allocation of liability under Section 7102(b) to carry over under the new statute and to apply to strict liability cases in the same way as it had done previously under the comparative negligence statute." *Id.*

Moreover, as particularly highlighted by Appellees' *amici*, apportionment of comparative responsibility, under the Fair Share Act, is explicitly to be undertaken "by the trier of fact." 42 Pa.C.S. §7102(a.2). Imposition of *per capita* liability under the previous common law scheme, on the other hand, is a mechanical matter of mathematical division occurring by operation of law and implemented by the court. Again, from my point of view, the General Assembly's intentions on the subject of comparative responsibility in the context of both negligence *and strict liability* claims are manifest.

I also respectfully disagree with the majority's conclusion that comparative apportionment of liability is impossible in asbestos cases. *See* Majority Opinion, *slip op.* at 25. I have previously observed that, in light of the immense uncertainties involved in assessing actual, product-specific causation in many asbestos cases, the courts have come to accept abstract assessments of increased risk as proxies for traditional substantial-factor causation. *See Rost v. Ford Motor Co.*, 637 Pa. 625, 668, 151 A.3d 1032, 1057 (2016) (Saylor, C.J., dissenting); *accord* Majority Opinion, *slip op.* at 6 (reflecting the risk-based analysis underlying Appellants' case at trial). Along these lines, because of all of the impediments to any sort of rational determination of dose in long-latency, toxic tort cases involving frequently undocumented, unquantified, and sometimes small exposures to many different sources of asbestos occurring long ago in the past, the platitude that "'[r]ough approximation' is no substitute for justice," Majority Opinion, *slip op.* at 26 (citation omitted), becomes quite meaningless in the asbestos litigation landscape. In this respect, I submit that "rough approximation" is at best a generous characterization for what occurs on a routine basis in asbestos-related trials in Pennsylvania and elsewhere.

Given that risk-based assessments are being accepted to support jury determinations of substantial-factor causation, I see no reason why the same litmus cannot be employed to support comparative responsibility assessments by jurors, as the Fair Share Act plainly contemplates. *See* 42 Pa.C.S. §7102(a.2) (providing for the presentation of support for comparative responsibility assessments "to the trier of fact"). By way of example, as I read the statute, it was intended to permit a factfinder to apportion liability differently between a manufacturer of loose insulation containing friable, amphibole asbestos to which a plaintiff may have been exposed on a daily basis in an industrial workplace for decades, and a local auto parts store which may have carried brake shoes (among its inventory of thousands of other products) containing asbestos encapsulated in resin, which the same plaintiff may have occasionally installed on his personal vehicles.

Furthermore, the majority's analysis appears to overlook that apportionment assessments are generally imprecise ones in many contexts, but they are nevertheless routinely entrusted to jurors. *See, e.g.*, Brief for Appellee Brand Insulations, Inc., at 40 (citing cases); Brief for Appellee Brief for Appellee John Crane, Inc., at 36 (same); *accord* Brief for *Amici* Pa. Chamber of Bus. & Indus., *et al.* at 5 ("Juries in states with some of the nation's busiest asbestos dockets routinely engage in percentage share apportionment in asbestos cases." (citations omitted)).

Again, I emphasize that substantial fairness concerns pervade on both sides in mass tort scenarios, particularly where they involve long-latency diseases. *Accord Gregg v. V-J Auto Parts, Co.*, 596 Pa. 274, 291-92, 943 A.2d 216, 226-27 (2007).

For the above reasons, I would affirm the order of the Superior Court.