J-A26017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STEPHEN P. WALLACE, JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PENN CENTRAL CORPORATION A/K/A AMERICAN PREMIER UNDERWRITERS, INC. AND CONSOLIDATED RAIL CORPORATION | |
| Appellees | No. 111 EDA 2021 |

Appeal from the Order Entered November 23, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 200101648

BEFORE:  BOWES, J., STABILE, J., and MCCAFFERY, J.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 10, 2022**

Appellant, Stephen P. Wallace, Jr., appeals from an order granting the motion filed by Appellees, Penn Central Corporation a/k/a American Premier Underwriters, Inc. ("American Premier") and Consolidated Rail Corporation ("Conrail") (collectively "Appellees") to dismiss Appellant's complaint filed in the Court of Common Pleas of Philadelphia County based on the doctrine of forum non conveniens, for re-filing in a more appropriate forum.  After careful review, we affirm.

The factual and procedural history is as follows: on January 15, 2020, Appellant, a lifelong resident of New York, instituted this action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, against American Premier, which is incorporated in Pennsylvania with a principal place

of business in Cincinnati, Ohio, and Conrail, which is incorporated in Pennsylvania with a principal place of business in Philadelphia. On March 25, 2020, Appellant filed an amended complaint alleging that he worked for Appellees as a carman and car foreman at Selkirk Yard and Croton Yard in New York and the Thompson Yard and Conway Yard in Pennsylvania. The amended complaint alleged that Appellant's employment with Appellees exposed him to harmful carcinogens that caused him to develop lung cancer.

In answers to interrogatories, Appellant stated that he worked in the Conway Yard in Pennsylvania in the 1980's, but he was unsure of the exact dates or names of witnesses who worked with him there, and he did not provide any documentation supporting his claim that he worked in Pennsylvania. During discovery, Appellant did not identify any co-workers or supervisors at the Thompson Yard. Nor did he provide any information about the dates or amount of time he purportedly worked at that location.

Also in response to interrogatories, Appellant identified two supervisors during his entire employment with Appellees, both of whom he claimed worked at the Selkirk Yard in New York. Additionally, Appellant identified four former co-workers who witnessed his alleged exposures to toxic substances, all of whom, according to Appellant, worked at the Selkirk Yard in New York. Conrail's last known addresses for five of these individuals were all in New York, but Conrail no longer employs any of them.

On September 22, 2020, Appellees filed a motion to dismiss based on *forum non conveniens*. In support of their motion, Appellees provided the

affidavit of Conrail's risk manager, who identified five of Appellant's former supervisors, all of whom have last known addresses in New York and none of whom was still employed by Conrail. Conrail did not have any records for an employee identified by Appellant named Joe Watozicz. The risk manager further averred that none of Conrail's files relating to Appellant are located in Pennsylvania. Appellees also attached Appellant's admissions that he does not reside in Pennsylvania, never resided in Philadelphia, never owned property in Pennsylvania, never worked for Appellees in Philadelphia, and was not diagnosed or treated for any injuries arising from this lawsuit in Pennsylvania. Appellees attached Appellant's responses to interrogatories in which he identified thirteen addresses at which he has lived, all of which are in New York. These responses also listed his medical providers, all of whom are located in New York. Finally, Appellees attached Conrail's responses to interrogatories, which named sixty-nine individuals Conrail has identified as former co-workers or supervisors of Appellant that may be called as witnesses at trial; sixty-seven of them have last known addresses in New York, one individual's last known address is in Massachusetts, and one individual's last known address is in Matamoras, Pike County, Pennsylvania.

Appellees stipulated that they would not object on the basis of venue or personal jurisdiction if this case was dismissed and refiled in Albany County, New York. Although Appellees did not waive the statute of limitations defense, they stipulated that so long as the action was refiled within ninety days of the dismissal order, the filing date to be used for statute of limitations purposes

in the refiled action would be January 15, 2020, the date on which Appellant filed his original complaint.

Appellant filed a response in opposition to Appellees' motion to dismiss for *forum non conveniens*, as well as a supporting memorandum. Appellant pointed out that six of the sixty-seven individuals from New York whom Appellees named as potential witnesses were deceased, but he did not furnish any evidence relating to the remaining sixty-one individuals. Appellant claimed that Pennsylvania was a convenient forum because he had worked for part of his career in Pennsylvania, and because both Appellees were Pennsylvania corporations headquartered in Philadelphia.

Appellant also asserted that he would call four fact witnesses who lived in Pennsylvania as witnesses:

> [Appellant] intends to call to testify four former corporate employees who worked at Conrail's headquarters in Philadelphia. [Appellant] intends to call Marcia Comstock, M.D., Conrail's former medical director, who worked for Conrail in Philadelphia and lives in Wayne, PA. [Appellant] intends to call William Barringer, Conrail's former safety director, who worked for Conrail in Philadelphia. Barringer now lives in Naples, FL. [Appellant] intends to call Ramon Thomas, Conrail's former industrial hygienist, who worked for Conrail in Philadelphia and lives in the Philadelphia area. [Appellant] intends to call Paul Kovac, Conrail's occupational claims manager, who worked for Conrail in Philadelphia, PA and lives in Hatboro, PA.

Appellant's Response In Opposition To Appellees' Motion To Dismiss, at ¶ 26. Appellant did not explain the matters to which Comstock or Kovac would testify. With regard to Barringer and Thomas, Appellant attached transcripts of their testimony in September 2019 in another FELA case in Philadelphia

County, *Nouse vs. Penn Central Corporation, Consolidated Rail Corporation and Norfolk Southern Railway Company*, and briefly described the substance of their testimony without citing the transcripts. Appellant's Memorandum In Opposition To Appellees' Motion To Dismiss, at 15-16. Appellant then argued it was proper to litigate this case in Philadelphia because Thomas "had a significant influence in the development, or lack thereof, of policies and procedures affecting railroad workers," and Barringer "was specifically aware of the dangerous work conditions and toxic exposures of these workers." *Id.* at 16.

On November 23, 2020, the trial court entered an order granting Appellees' motion to dismiss without prejudice to refiling this action in Albany County, New York, or another appropriate jurisdiction. The order stated that if this action was refiled within ninety days of the entry of its order, the filing date to be used for statute of limitations purposes in the re-filed action shall be January 15, 2020. On December 23, 2020, Appellant filed a timely appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three questions in this appeal:

1. Whether the Trial Court abused its discretion in finding that weighty reasons existed to support dismissal under the doctrine of *forum non conveniens*.

2. Whether the Trial Court abused its discretion by granting [Appellees'] Motion to Dismiss on the basis of *forum non conveniens* where the negligent actions, inactions, and decisions made in Philadelphia by Philadelphia-based corporate employees ultimately failed to provide [Appellant] with a reasonably safe workplace that he was entitled to under the FELA.

- 5 -

3. Whether the Trial Court abused its discretion by granting [Appellees'] Motion to Dismiss on the basis of *forum non conveniens* in considering the alleged inconvenience of sixty-nine (69) witnesses who are not known to have relevant testimony to [Appellant's] case, if they are still alive, over the actual inconvenience of [Appellant's] three named fact witnesses which reside in the Philadelphia area and have relevant testimony about [Appellant's] theory of liability.

Appellant's Brief at 2-3. We review these questions together because they ultimately require that we address a single issue: whether the trial court abused its discretion by dismissing Appellant's action under the doctrine of *forum non conveniens.*

FELA affords the plaintiff a "substantial right" to select the forum in which to file his or her FELA claims. 45 U.S.C. § 56. Notwithstanding this right, the doctrine of *forum non conveniens* permits the trial court to dismiss a case in whole or in part if it "finds that in the interest of substantial justice the matter should be heard in another forum[.]" 42 Pa.C.S.A. § 5322(e); *see also Hovatter v. CSX Transp., Inc.*, 193 A.3d 420, 425-26 (Pa. Super. 2018) (FELA does not heighten deference afforded to plaintiff's choice of forum in context of *forum non conveniens*). The party seeking dismissal bears the burden of proof. *Failor v. FedEx Ground Package System, Inc.*, 248 A.3d 527, 535 (Pa. Super. 2021). Our courts lack the authority to transfer matters to courts of our sister states; rather, when appropriate, our courts should dismiss the action to permit re-filing in another state. *Rahn v. Consolidated Rail Corporation*, 254 A.3d 738, 747 n.6 (Pa. Super. 2021).

The *forum non conveniens* doctrine "provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances." *Id.* at 747. Two main factors guide the determination on whether the plaintiff has chosen a proper forum. *Id.* at 248. One is whether the plaintiff has an available alternative forum to refile claims if they are dismissed. *Id.* Appellant does not claim that New York's statute of limitations bars him from refiling this action in New York, so we need not analyze this factor further.

The second factor, which the parties dispute, is whether "weighty reasons" justify the court's decision to altering the plaintiff's choice of forum. *Id.* The plaintiff's choice of forum must be given a high degree of deference, but to a lesser extent where the plaintiff chooses a foreign forum in which to litigate his claims. *Id.* The assessment of "weighty reasons" implicates both public and private interests. *Id.* Private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial.

*Id.* Public interests include:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is

appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* "It is within the trial court's discretion to weigh some of these factors more heavily than others," because "weighing the factors is not an exercise in counting numbers." *Lyndes v. Penn Central Corporation*, 254 A.3d 725, 738 (Pa. Super. 2021).

Analysis of *forum non conveniens* requires the court to consider the relative convenience of the forum state and the state proposed by the defendant as the proper forum. *Failor*, 248 A.3d at 537 (in personal injury action brought in Philadelphia by plaintiff who resided in Hagerstown, Maryland, determination of *forum non conveniens* required court to consider relative convenience of Pennsylvania and Maryland, not Philadelphia and Hagerstown; court abused its discretion by dismissing case on ground that Philadelphia was inconvenient forum).

We review orders on motions to dismiss under *forum non conveniens* for abuse of discretion. *Rahn*, 254 A.3d at 747. "This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand." *Id.* "An abuse of discretion occurs if, inter alia, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is de novo and the scope of review is plenary." *Id.* "An abuse of discretion occurs if, inter alia, there was an error of law or the

judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary."

***Id.***

In recent years, this Court has decided multiple appeals concerning whether *forum non conveniens* applies to FELA cases brought by out-of-state plaintiffs in Pennsylvania against railroad companies (mostly Conrail and Penn Central). In all of these cases, the plaintiffs identified the same four witnesses from Pennsylvania that would testify on their behalf that Appellant has proffered in this case: Comstock, Barringer, Thomas and Kovac. In the vast majority of these cases, we held that the trial court acted within its discretion by dismissing the actions on the ground of *forum non conveniens*. ***See Rahn***, ***supra***; ***Lyndes***, ***supra***; ***Stevens v. Penn Central Corporation***, 251 A.3d 798 (Pa. Super. 2021); ***DeAngelis for Estate of Bloom v. Penn Central Corporation***, 251 A.3d 432 (Pa. Super. 2021); ***Burnett v. Penn Central Corporation***, 250 A.3d 1240 (Pa. Super. 2021); ***Hurt for Estate of Jones v. Penn Central Corporation***, 250 A.3d 1227 (Pa. Super. 2021); ***Sacco v. Penn Central Corporation***, —A.3d—, 2021 WL 4305876 (Pa. Super. 2021) (unpublished); ***Favire v. Consolidated Rail Corporation***, —A.3d—, 2021 WL 4279772 (Pa. Super. 2021) (unpublished); ***Chatman v. Consolidated Rail Corporation***, —A.3d—, 2021 WL 4167787 (Pa. Super. 2021) (unpublished). In another decision, ***Ficarra v. Consolidated Rail Corporation***, 242 A.3d 323 (Pa. Super. 2020) (consolidating nine cases for

- 9 -

purposes of disposition), we vacated orders denying motions to dismiss in eight cases, and we denied dismissal in one case because it was trial-ready due to completion of discovery and the selection of a trial term. In only one case did we hold that the trial court properly denied the railroad companies' motion to dismiss. **Robbins for Estate of Robbins v. Penn Central Corporation**, 212 A.3d 81 (Pa. Super. 2019).

In the present case, the trial court began its analysis by comparing **Robbins** with **Ficarra**. We, too, find it instructive to compare **Robbins** and **Ficarra**, since **Ficarra** is representative of the decisions in which we have held that *forum non conveniens* warranted dismissal of FELA actions filed in Pennsylvania.

**Robbins** involved a decedent who exclusively worked in Indiana and featured out-of-state witnesses related to his previous employment. After the defendants moved to dismiss on *forum non conveniens* grounds, the plaintiff named Comstock, Barringer, Thomas, and Kovac as witnesses, stating that "although the decedent worked at the train yard in Indiana, the policies and procedures related to [his] exposure to chemicals and cancer-causing substances were determined at [Conrail's] headquarters in Philadelphia." **Id.**, 212 A.3d at 85-86. The plaintiff also discounted the necessity to view the work site as "extremely dangerous." **Id.** at 86. Ultimately, the defendants' motion to dismiss was denied.

On appeal, this Court held that the court did not abuse its discretion in finding that weighty reasons did not exist to dismiss that case. With regard to the private factors, the trial court concluded there was no evidence that Indiana would provide easier access to the decedent's employment records, which are housed in New Jersey and/or Florida. With regard to the cost of obtaining the attendance of willing witnesses and the availability of compulsory process for obtaining the attendance of unwilling witnesses, the trial court noted that the railroad companies identified two former employees as potential witnesses, one who resided in Illinois and another who resided in Indiana. The plaintiff, on the other hand, identified the four fact witnesses referenced above, all of whom resided in Pennsylvania and were former Conrail employees. Additionally, the trial court noted the railroad companies' concession that it is unlikely any party would seek a request to view the train yard at issue. With regard to public factors, the plaintiff averred that although he worked in Indiana, the policies and procedures related to his exposure to chemicals and cancer-causing substances were determined at Conrail's headquarters in Philadelphia, thus establishing Pennsylvania's relation to the litigation. Having analyzed the court's assignment of weight to both private and public factors, we ascertained that the railroad companies did not meet the necessary burden to establish *forum non conveniens*. **Robbins**, 212 A.3d at 90.

In **Ficarra**, the nine plaintiffs all resided outside of Pennsylvania and were never employed by the defendants in Pennsylvania. In their motion to dismiss, the defendants averred that there was a lack of both fact witnesses and sources of proof in Pennsylvania; the defendants would be "unable to avail themselves of compulsory process for attendance of unwilling witnesses"; the fact-finder would be unable to view the plaintiffs' work premises; and there would be burdens on taxpayers as well as the Philadelphia court system, generally. **Id.**, 242 A.3d at 327. The plaintiffs responded by indicating their intention to call Comstock, Barringer, Thomas, and Kovac as fact witnesses.

The trial court found that: (1) only one of the four witnesses proposed by the plaintiffs irrefutably lived in Pennsylvania; (2) all of the plaintiffs' former coworkers and supervisors lived outside of Pennsylvania; (3) the plaintiffs' injuries all occurred outside of Pennsylvania; and (4) all medically relevant information, as well as the medical staff who performed work on these plaintiffs, existed outside of Pennsylvania. The court initially denied the motion to dismiss as to all but one plaintiff, but it later concluded in its Pa.R.A.P. 1925 opinion that it abused its discretion by denying the motion.

Distinguishing **Robbins**, this Court agreed that the initial denial of the motion to dismiss was an abuse of discretion. Whereas the plaintiff in **Robbins** "set forth a specific argument that Conrail developed policies and procedures in its Philadelphia office that created the conditions leading to plaintiff's injuries," the plaintiffs in **Ficarra** "presented scant argument" as to

those employees' relevance. ***Ficarra***, 242 A.3d at 336. Moreover, there was also ambiguity in the record over the residency of three of the four Philadelphia-connected proposed witnesses. In summation:

> All of [p]laintiffs' former co-workers, supervisors, and diagnosing and treating physicians reside outside Pennsylvania. The work sites are outside Pennsylvania. The only connection to Pennsylvania relevant to [p]laintiffs' claims is that four individuals who used to work in Philadelphia were allegedly involved in the drafting and implementation of procedures that led to [p]laintiffs' injuries. However, on the records before the trial court, only one of those witnesses undisputedly resides in Pennsylvania currently. Moreover, [p]laintiffs largely failed to explain the relevance of the former employees' testimony. Weighing the private and public interest factors using the correct evidentiary burden, the trial court here ultimately concluded [in its Pa.R.A.P. 1925 opinion] that [r]ailroad [d]efendants presented sufficient weighty reasons to warrant dismissal for forum non conveniens in these eight cases. We discern no abuse of discretion by the trial court in reaching this conclusion.

***Id.*** at 337.

The trial court herein began its analysis by summarizing ***Ficarra*** and ***Robbins***. It then held that private factors justified the dismissal of the present case:

> In the case *sub judice*, the private factors weigh heavily in favor of dismissal. New York offers far easier access to the sources of proof in this case. [Appellant's] career with Conrail and Penn Central was centered in New York—that is where [Appellant] lived, where the Selkirk Yard and Croton Yard are located, where [Appellant's] medical providers are located, and the location of the last known addresses for the vast majority of the former co-workers and supervisors identified by both [Appellant] and [Appellee] . . . [Appellant's] employment records are not located in New York; however, they are not located in Philadelphia, either.
>
> [Appellant] relied on his identification of Comstock, Barringer, Thomas, and Kovac as potential witnesses to show Philadelphia

also offers ease of access to witnesses. However, just as in **Ficarra**, [Appellant] offered scant evidence concerning these four witnesses or the relevance of their testimony to any theories of liability. Initially, [Appellant] admitted Barringer lives in Florida; accordingly, Barringer's status as a potential witness did not affect this Court's evaluation of the ease of access to sources of proof. With respect to Comstock, Thomas, and Kovac, [Appellant] did not identify the relevance of any testimony they may provide. [Appellant's] failure to identify the relevance of Comstock, Thomas, and Kovac's testimony was particularly egregious in light of [Appellees'] averment that [Appellant] "does not describe who any of these witnesses are, or what testimony they may possess relevant to his claims." In light of [Appellant's] failure to explain the relevance of their testimony, the identification of Comstock, Thomas, and Kovac as potential witnesses is insufficient to justify keeping this case in Philadelphia.

Trial Court Opinion, 3/19/21, at 11-12. In a footnote, the trial court declined to review the transcript of Thomas's testimony in the **Nouse** case that Appellant attached to his response:

[Appellant] attached a transcript of Thomas's trial testimony from a prior FELA case as Ex. 23; however, his Response in Opposition [to Appellees' Motion to Dismiss] does not reference Thomas' intended testimony or Ex. 23. The final substantive page of [Appellant's] Memorandum of Law discussed Thomas's proposed testimony in general terms but did not cite any specific testimony from the transcript or explain how Thomas's prior testimony related to the injuries suffered by [Appellant]. **Contra Robbins**, 212 A.3d at 85-86 (finding the naming of Comstock, Barringer, Thomas and Kovac established a connection to Philadelphia because the [Appellant] alleged "although the decedent worked at the train yard in Indiana, the policies and procedures related to the decedent's exposure to chemicals and cancer-causing substances were determined at [Conrail's] headquarters in Philadelphia"). This Court will not sift through Thomas's prior testimony and attempt to discern its relevance to the case at hand. It is the parties' obligation to cite any law or references to the record to support their argument. **See**, **e.g.**, **Roverano v. John Crane, Inc.**, 177 A.3d 892, 896 n.2 (Pa. Super. 2017) ("Appellant Crane also argues in one paragraph that we should reverse the trial court because its errors are cumulative. Since

- 14 -

Appellant does not develop this argument or cite any law or references to the record to support this argument, we find this argument waived") *affirmed in part, reversed in part on other grounds*, 226 A.3d 526 (Pa. 2020).

*Id.* at 12 n.3. The court went on to hold that other private factors favored

dismissal:

> The remaining private factors also weigh in favor [of] dismissal. The Uniform Interstate Depositions and Discovery Act, which has been adopted by both Pennsylvania and New York, see 42 Pa.C.S.[A.] §§ 5331-5337; 31 C.P.L.R. 3119, minimizes any difficulty in obtaining discovery from third-parties; however, if this case was to go to trial in Philadelphia, this Court lacks the ability to compel the attendance of unwilling witnesses, the majority of whom live in New York. Finally, to the extent either party seeks a view of [Appellant's] former work locations, Philadelphia is not convenient to any of the four work locations identified by [Appellant].

*Id.* at 12-13.

The trial court rejected Appellees' arguments that public factors justified

dismissal:

> [Appellees] made two arguments concerning the public factors: 1) Philadelphia's courts are congested, as illustrated by a 2017 Legal Intelligencer article appended to their Motion and will become more congested due to the cancellation of jury trials due to COVID-19, and 2) Philadelphia juries should not be burdened by the claims of out-of-state plaintiffs who suffered injury in a foreign location.
>
> With respect to the issue of court congestion, the evidence presented by [Appellees], a 2017 Legal Intelligencer article which referenced an increase in filings in the Court's Complex Litigation Center, is of minimal value. As can be expected, an article from 2017 does not accurately reflect the current status of this Court's dockets; for example, in the three years since that article was published, the Complex Litigation Center disposed of more than four thousand pharmaceutical products liability cases. Furthermore, the instant case was not assigned to the Complex

- 15 -

Litigation Center, it was assigned to the Day Forward 2020 program; accordingly, any perceived congestion in the Complex Litigation Center is irrelevant to the instant matter.

[Appellees] also argue this case should be transferred to alleviate congestion caused by the cancellation of jury trials due to COVID-19. This argument is not persuasive; civil jury trials have already resumed in Philadelphia and this Court expects more civil jury trials will occur as vaccination rates increase and COVID-19 cases decrease. Additionally, COVID-19 is a global pandemic; therefore, it's entirely reasonable to believe COVID-19 is affecting the New York courts as well. As to the burden imposed on a Philadelphia jury to hear this case, the Court remains cognizant of the fact [Appellees] are Pennsylvania citizens and [Appellee] Conrail is headquartered in Philadelphia. Accordingly, the public factors in this case are, at best, equivocal.

*Id.* at 14.

Weighing all private and public factors "qualitatively," the court determined that weighty reasons justified dismissal of this case. *Id.* at 14.

We conclude that the trial court acted within its discretion by dismissing the present case. Although the court found that public factors cited by Appellees did not support dismissal, the court properly determined that the private factors weighed heavily in favor of dismissal. The court had the authority to dismiss this case solely on the basis of private factors in view of its discretion to weigh some factors more heavily than others. *Lyndes*, 254 A.3d at 738.

We agree with the trial court that this case is more similar to *Ficarra* and not *Robbins*. As in *Ficarra*, the sources of proof in this case are virtually all outside of Pennsylvania. Appellant lives, and has always lived, in New York, and the last known addresses of the vast majority of former co-workers and

supervisors identified by Appellant and Appellees are in New York. Although Appellant argues that several of the individuals identified by Appellees are deceased, Appellants fail to rebut the fact that most of them are still alive or that any of them reside in Pennsylvania. The diagnosis of his injuries and his medical treatment has been entirely in New York, and his medical providers reside in New York. Appellant admitted that he worked in two New York railroad yards, and while he also claimed that he worked in Pennsylvania for part of the 1980's, he failed to provide documentary support for this point. Thus, the trial court correctly concluded that most of his career was in New York. Trial Ct. Op. at 11 (Appellant's career was "centered in New York").

Like the plaintiffs in **Ficarra** and the other cases gathered above, Appellant insists that *forum non conveniens* does not apply based on four individuals—Comstock, Thomas, Kovac and Barringer—who allegedly used to work in Philadelphia and were involved in the drafting and implementation of procedures that led to his injuries. The trial court acted within its discretion by rejecting this argument.

First, the court reasoned that Philadelphia does not offer easy access to Barringer because he lives in Florida. Pennsylvania is plainly an inconvenient forum for Florida residents such as Barringer. **See Rahn**, 254 A.3d at 747 ("if there is any basis for the trial court's decision" for finding *forum non conveniens*, "the decision must stand").

Next, Appellant totally failed, in his response to the motion to dismiss, to describe the substance or relevance of Comstock's or Kovac's testimony.

Finally, the trial court pointed out that although Appellant attached a transcript of Thomas's testimony in the **Nouse** case to his response to the motion to dismiss, Appellant failed to provide any citations to specific testimony in the transcript, let alone explain how this testimony was relevant to Appellant's action. This was a proper exercise of discretion. We have held that in appeals to this Court, when the appellant fails to provide citations to the record, "it is not [this Court's] duty to scour the record and act as the appellant's counsel." **Hayward v. Hayward**, 868 A.2d 554, 558 (Pa. Super. 2005). We also have held that when trial courts decide summary judgment motions, "[its] failure to scour the record for every conceivable ground on which to deny summary judgment cannot serve as a basis for appellate review." **Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership**, 764 A.2d 1100, 1105 (Pa. Super. 2000). Although we have not found any decision applying "scouring" precepts to *forum non conveniens* motions, we think it clear that it applies with equal force in this context. Appellant cannot simply attach the transcript of testimony by a proposed witness to his response to a *forum non conveniens* motion, neglect to cite relevant portions of the transcript in his response, and assume that the trial court will scour it for evidence that supports his position. The court had the

discretion to decline this task on the ground that it would cross the line from serving as neutral factfinder to acting as surrogate counsel for Appellant.[1]

In short, the trial court carefully weighed a private and public factors, and although it found that the public factors did not support dismissal of Appellant's case, the private factors did. Consistent with **Lyndes**, the court had the discretion to weigh some factors more heavily than others. In our view, the court acted within its discretion by determining that the private factors were weighty enough to justify dismissal of this case with leave to refile it in New York or some other appropriate jurisdiction. Accordingly, we affirm the court's order dismissing this case without prejudice.

Order affirmed.

_____

[1] Not only did Appellant's opposition papers in the trial court lack citations to Thomas's testimony, but its description of Thomas's testimony was wholly unpersuasive. According to Appellant, in **Nouse**, Thomas testified that in his capacity as Conrail's hygiene manager, he developed respiratory protection and hazard communication programs in 1998. Memorandum In Opposition To Appellee's Motion To Dismiss For *Forum Non Conveniens,* at 15-16. Appellant claimed that this was "too little, too late" because Conrail was in existence since 1976, and its failure to develop programs until 1998 "is negligence under FELA." **Id.** at 16. This assertion fell short of demonstrating how Conrail's policies related to Appellant's FELA claim or to undermine Appellees' *forum non conveniens* argument.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 2/10/2022*